**UNITED STATES of America,**
**Appellee,**
**v.**
**Edward Lee JENKINS, Appellant.**
**No. 9489.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 4, 1965.

Decided June 28, 1965.

Harold W. Adams (Court-assigned counsel), Salem, Or., for appellant.

MacDougal Rice, Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., on brief), for appellee.

Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.

SOBELOFF, Circuit Judge.

Appellant was indicted for passing and uttering an altered Treasury check to John Parker with knowledge of the alteration and intent to defraud. 18 U.S.C.A. § 472 (1950). The jury having found him guilty and the court having sentenced him to two years' imprisonment, this appeal was taken.

The defendant was regularly receiving a United States disability pension of $19.00 per month. One of such monthly checks, made out for the usual amount, was altered to show the amount payable as $2,919.00. Jenkins endorsed the check and presented it initially to Mrs. Nellie Dawson, a teller at the Clarendon Trust Company Bank in Arlington, Virginia.

As the check appeared to her to have been altered and soiled, Mrs. Dawson returned it to Jenkins, saying that he would have to discuss the matter with Mr. Parker, the Assistant Manager, whom she immediately called. When Parker arrived Jenkins handed him the check, stating again that he wished to cash it. Parker replied that because the check appeared to be altered he could not give Jenkins cash at that time. He informed Jenkins that if he had an account at the bank he could deposit the check and the bank would put a "hold" on it. This meant, according to the testimony, that Jenkins could not make withdrawals against the deposit until the check cleared. Parker told Jenkins that he would be advised when it cleared.

The defendant, who had a checking account at the bank, filled out a deposit slip in the amount of $2,919.00 and left it and the check with the bank, which, despite the suspicions raised by the appearance of the check, sent it to the Clearing House in the usual manner. The Clearing House later notified the bank that it refused payment because of the alteration. No funds were credited to Jenkins on account of this check and he derived no financial benefit from the aborted transaction.

At trial Jenkins testified that he did not open the envelope in which he received the check until he arrived at the bank and that he then endorsed it without looking at its face to see the amount payable. He further stated that when he presented the check to Mrs. Dawson he was unaware that it was in the amount of $2,919.00, but he readily admitted that he became aware of the alteration when Mrs. Dawson refused to cash the check and stated the reason. The check's soiled condition was explained by the defendant as having been caused by the envelope falling out of the mailbox and onto the ground.

Appellant urges several interrelated grounds for reversal. First, he complains of the District Court's failure to grant his motions for judgment of acquittal. There was insufficient proof, he says, both of a specific intent to defraud, and of the uttering charged in the indictment, namely, the uttering to Parker. Jenkins' view of the testimony is that the Government failed to prove an uttering and established only that he showed the check to Parker without attempting to pass it, and that he subsequently left it with the bank merely for safekeeping until it could be determined whether the check would clear. Similarly he argues that there was no evidence that he received or attempted to receive payment for the check, and that therefore the Government has failed to prove the necessary intent to defraud.

Viewing the evidence in the light most favorable to the prosecution, there unquestionably was sufficient evidence warranting submission of these issues to the jury. While there was some conflict, the jury was afforded a substantial basis to conclude that Jenkins knew the check had been altered. Indeed he did not deny learning this from Mrs. Dawson. Furthermore, although Jenkins denied that he knew of the alteration before presenting the check to Mrs. Dawson, the jury was not thereby prevented from concluding beyond a reasonable doubt that he did in fact have such prior knowledge. The jury, as sole judge of credibility, could completely reject Jenkins' version, as it apparently did.

The further contention based on the fact that the appellant received no money rests upon a misconception of the nature of the crime. The lack of success of a scheme to defraud is no defense to the charge. The judge, when imposing sentence, may in the exercise of his discretion take into consideration the defendant's success or lack of success, but if the plan itself is inept or its execution bungled the offender is not automatically clothed in a mantle of immunity. The offering of the instrument with intent to defraud is in itself sufficient to constitute a passing or uttering. United States v. Rader, 185 F.Supp. 224, 230 (W.D.Ark.1960), aff'd, 288 F.2d 452 (8th Cir. 1961); United States v. Mitchell, 26 Fed.Cas.No.15,787, p. 1276 (1831);

cf. Leonard v. United States, 324 F.2d 911 (9th Cir. 1963). The scheme to swindle which the defendant fashioned was not very sophisticated; it was in fact quite crude and one is not surprised to learn that it failed. But the elements of the offense charged are present according to the proof adduced by the Government and largely confirmed by the defendant himself.

Next, the defendant attacks the District Court's refusal to grant an instruction to the effect that if Jenkins, when advised of the amount appearing on the face of the check, did not thereafter declare the check to be good the jury must find him not guilty. There was no error in the refusal of this instruction, for it has no foundation in the testimony. Even if the jury failed to find that the defendant knew the amount of the check before presenting it to Mrs. Dawson for cashing, it is conceded that he gained this knowledge from her when she rejected the check and before he presented the check to Parker and then deposited it. Presenting the check together with the deposit slip in the channels for collection was the clearest representation that it was a genuine instrument. It was not necessary for him to declare in terms that it was "good."

Finally, objection is raised to the following portion of the court's charge to the jury:

"[Y]ou must find beyond a reasonable doubt that he [the defendant] knew the instrument to be altered at the time he presented it *to the bank* for cashing." (Emphasis supplied).

The theory of the objection is that by the use of the words "to the bank" instead of "to John Parker," as alleged in the indictment, the charge improperly permitted the jury to convict the defendant of presenting the check to Mrs. Dawson, a crime with which he was not charged. The simple answer is that the initial presentation of the check to Mrs. Dawson was part of the chain of events by which the check was later "uttered" to Mr. Parker, who like Mrs. Dawson was an agent of the bank.

Nevertheless, if the alteration of a check is so obvious that no one of even fair intelligence could hope to deceive the bank or the issuer, a serious question arises as to the utterer's capacity to formulate a *mens rea*, without which there is no criminality. Moreover, when a plan is so preposterous and so manifestly destined to failure that no reasonable mind would expect it to deceive anyone, the conclusion is strongly suggested that the course of conduct cannot reasonably constitute an attempt to defraud. These considerations were not explicitly suggested, either in the District Court or here. Furthermore, the jury's verdict impliedly resolves them against the appellant.

We think that in the interest of justice we should ask the District Judge to inquire into the defendant's mental condition at the time of his offense. It may be that after such inquiry a lesser sentence, probation, a new trial or other disposition may be indicated. To continue the jurisdiction of the District Court for this purpose, we will vacate the present sentence and remand the case for reconsideration in the aspect we have indicated and the entry thereafter of an appropriate judgment.

Vacated and remanded for further consideration.