**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Robert J. HOGSHOOTER,
Defendant-Appellant.**

**No. 12246.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 27, 1982.

Motion for Rehearing or Transfer
Denied Oct. 12, 1982.

Application to Transfer Denied
Nov. 15, 1982.

Linda K. Thomas, Springfield, for defendant-appellant.

John Ashcroft, Atty. Gen., John Jacobs, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

A jury found defendant Robert J. Hogshooter guilty of forgery in violation of § 570.090.1(1), RSMo 1978.[1] The trial court found defendant to be a persistent offender within the meaning of § 558.016.2 and assessed his punishment at imprisonment for a term of 7 years. Defendant appeals.

In recounting the evidence adduced by the State—defendant did not testify—we address defendant's contention that the State failed to make a submissible case. Defendant asserts that the burden of proof is on the State to establish by evidence the guilt of the accused beyond a reasonable doubt, citing *State v. Howard,* 540 S.W.2d 86, 88[3] (Mo. banc 1976). We agree. Nevertheless, in determining whether the evidence is sufficient to support the verdict, the facts in evidence and all favorable inferences to be drawn therefrom must be considered in the light most favorable to the State and all evidence and inferences to the contrary must be disregarded. *State v. Franco,* 544 S.W.2d 533, 534[1] (Mo. banc

1976), cert. denied 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

So taken and considered, the record shows that about the first of February 1980, defendant entered into a brief liason with one LeNetia Barrett. LeNetia then had a checking account at the Bank of Urbana, Missouri. After she and the defendant parted company "the last week in February," LeNetia discovered that a pad of her blank checks, numbered 125 to 150, was missing. To protect herself, LeNetia "froze" her bank account. According to her banker, "freezing" meant that the bank would neither accept deposits to nor checks drawn on the account. LeNetia categorically denied she had ever given the defendant a) blank checks; b) any checks signed in blank, or c) permission to draw checks on her account. After LeNetia had "frozen" her account, the defendant "came back up to [her] house . . . , [and she] asked [defendant] about the checks being gone, and [defendant] said, yes, he did take them."

Walter Locke, who had been head bartender at a bar in south Springfield in March 1980, testified that defendant appeared in the bar about 6 p.m. on March 3, 1980. Locke did not know the defendant's name, but recognized him as a regular customer. Defendant asked Locke if he would cash a check. Locke agreed.

The defendant then tendered a check to be cashed. The check is before us as State's exhibit 1. The name "LeNetia Barrett," with an address, is printed on the face of the check at the upper left; at the upper right corner, the number 131 is printed. The name of the drawee bank, The Bank of Urbana, is printed at the lower left on the face of the check, and at the bottom, below the signature line, the digits "12 395 1" appear in computer-legible type. The following writing appears on the face of the check: "3–3–80" as the date the check was drawn; "R.J. Hogshooter" as the name of the payee; "30.00" and "Thirty dollars +

1. All references to statutes and rules are to RSMo 1978, V.A.M.S. and V.A.M.R., unless    otherwise noted.

no/100 _____" as the amount for which the check was made, and upon the signature line the name "LeNetia Barrett" appears.

Locke testified the check had already been "filled out" when it was presented. Defendant endorsed the check "R.J. Hogshooter" in Locke's presence; Locke gave defendant $30.00 in cash. This check was shown to LeNetia upon direct examination; she stated it was one of the checks taken from her, and further testified she had not signed it. Examination of State's exhibit 2, the signature card executed when the account was opened, shows that the drawee bank assigned the number 12–395–1 to LeNetia's account.

The State also had the evidence of Detective Sergeant McGuire, an expert in handwriting analysis and identification. McGuire's qualification is not in issue. Detective McGuire had examined the signature card, the check which defendant cashed, and eight handwriting exemplars furnished by the defendant at the court's order. McGuire testified that in his opinion, the handwriting on the check was not that of LeNetia Barrett, but that of the defendant.

We hold that any rational trier of fact could find or infer the existence of every element of the crime charged beyond a reasonable doubt. Inasmuch as the defendant's argument deteriorates into an argument that LeNetia's testimony was not substantial evidence, we need not fully construe § 570.090.1(1); the language of that subsection is at least broad enough to comprehend the elements of common-law forgery; i.e., 1) a false making or other alteration of an instrument of writing; 2) a fraudulent intent, and 3) an instrument so altered as to be apparently capable of effecting a fraud. State v. Andrews, 297 Mo. 281, 288–289, 248 S.W. 967, 969[6] (1923). The evidence amply warrants a finding that defendant falsely altered one of LeNetia Barrett's blank checks so as to make it appear to have been made by her; the instrument, even before endorsement, was a check, an instrument capable of effecting a fraud. An intent to defraud could be inferred from the act of forgery or transfer-

ring the forged instrument. State v. Douglas, 312 Mo. 373, 394–395, 278 S.W. 1016, 1022 (1926); State v. Gantt, 504 S.W.2d 295, 300 (Mo.App.1973); State v. Massey, 492 S.W.2d 48, 51–52 (Mo.App.1973). The defendant's argument that LeNetia's testimony did not amount to substantial evidence is unavailing here. The determination of the credibility of witnesses and the weight to be given their testimony are matters for the jury to determine. State v. Newberry, 605 S.W.2d 117, 121 (Mo.1980); State v. Kellick, 521 S.W.2d 166, 167 (Mo.App.1975). In reviewing a jury verdict in a criminal case, the appellate court does not undertake to determine the credibility of the witnesses nor weigh the evidence. State v. Small, 423 S.W.2d 750, 751 (Mo.1968); State v. Nolan, 499 S.W.2d 240, 250 (Mo.App.1973). As presented, the point is without merit.

The defendant has briefed several diffuse assignments of error addressed to the production and use of the handwriting exemplars. We have examined these involuted points and find that only three of the specific points briefed were assigned as error in defendant's motion for new trial. Rule 29.11(d) provides, with certain exceptions not immediately material to the assignment of error, that "In jury tried cases, allegations of error to be preserved for appellate review must be included in a motion for new trial . . . ." Rule 29.12(b) permits an appellate court to consider plain error in its discretion, but appellate counsel's expansion of trial counsel's assignments 2, 3 and 4 in the motion for new trial raise no spectre of "manifest injustice or miscarriage of justice." We may say, however, that the brief represents admirable compliance with the duties imposed on appellate counsel by our Supreme Court in State v. Gates, 466 S.W.2d 681 (Mo.1971).

Assignments 2 and 3 in the Motion for New Trial are, in substance, that the trial court erred in admitting Detective McGuire's testimony or in refusing a continuance because McGuire's testimony was not disclosed to counsel until the day of trial and trial counsel was unable to obtain rebuttal evidence. These points are singularly without merit.

■ The record before us, by which we are bound, *State v. Neal,* 476 S.W.2d 547, 549[2, 3] (Mo.banc 1972); *State v. Friend,* 607 S.W.2d 902, 904[5] (Mo.App.1980), indicates that on December 3, 1980, defendant appeared in court with appointed trial counsel and asked for a continuance. The State agreed to the continuance. The trial court then announced:

"The State has filed a Motion For Production Of Handwriting Sample Of Defendant Robert Jackson Hogshooter Pursuant To Rule 25.06."

Defendant's counsel objected on the ground that such action would infringe defendant's Fifth Amendment rights. The court's attention was called to Rule 25.-06(B)(6), whereupon the trial court granted the State's motion. The State announced that it "understood" defendant was in jail and would attempt to obtain the exemplars at a convenient time.

Before McGuire testified, defendant's counsel made an anticipatory objection to any testimony McGuire might give because the handwriting samples had not been taken until 9 a.m. on the day of the trial and counsel had not seen any written reports, and would not, in any case, "have any ability to come back with any ... rebuttal." Trial counsel admitted with characteristic candor that he had known for some time handwriting exemplars would be taken. The trial court refused to exclude the testimony or to grant a continuance.

■ Of course, the general rule, repeated and reiterated, is that granting or denying a continuance is a matter of discretion with the trial court and an appellate court will not interfere unless it clearly appears that discretion has been abused. *State v. Le Beau,* 306 S.W.2d 482, 486[5] (Mo.1957). That case, incidentally, disposes of defendant's elaborate contention that the court improperly took notice of the history of the case in deciding whether to grant the motion for continuance. *State v. Le Beau,* supra, 306 S.W.2d at 486[1–4].

■ Reduced to essentials, defendant's argument is not that he was surprised, but that he was confronted with inculpatory evidence on such short notice that he had no opportunity to refute or offset it. The allegation of error must be subjectively considered, but it involves at least two questions: 1) Whether the defendant had shown reasonable diligence to obtain evidence he obviously anticipated the State would produce, see *State v. Le Beau,* supra, 306 S.W.2d at 486, and 2) Whether there was any demonstrable prejudice to the defendant because the continuance was denied. See Project: Eleventh Annual Review of Criminal Procedure, 70 Geo.L.J. 547, 602–604 (1981). Here, the defendant had known for almost 3 months that the State would take handwriting samples to compare with the handwriting on the check; certainly the check and LeNetia's signature card were available to him. If he had wished to obtain the testimony of another expert or any species of evidence to offset McGuire's testimony, he had ample opportunity to do so.

Further, no prejudice is demonstrated. Defendant baldly asserts that if he had had time, he could have offered rebuttal to McGuire's evidence. This assertion prompts the inquiry: Well, how? What could defendant have done, what could he have shown that he could not have done or prepared to show in the 90 days preceding the trial? Without some showing that further delay would have produced something exculpatory, we cannot hold there was an abuse of discretion. See *United States v. Tilton,* 610 F.2d 302, 304–305[1–3] (5th Cir. 1980).

■ Finally, the defendant asserts that the court made a prejudicial comment on the evidence after McGuire had testified. McGuire stated that he obtained the handwriting samples—there are eight before us as State's exhibit 3—by dictating "exactly what was on the check"; defendant then wrote the digits or words dictated by McGuire. The record shows that counsel was present when the samples were taken. On cross-examination McGuire was asked: "And was he reluctant about signing them ...?" McGuire's answer was: "No, sir, he was not reluctant." After the samples

were handed to the jury, the State asked permission to show that the handwriting samples were obtained pursuant to court order. In the presence of the jury, the State was permitted to ask the court to take notice that the handwriting samples were so obtained. All the court said in the jury's presence was "The Court [takes] judicial notice of that fact." Defendant, in his motion for new trial, asserted that this statement amounted to a prejudicial comment on the evidence, indicating that the court believed the defendant was guilty.

We have given this point our attention, but find it to be without merit. We find absolutely no similarity between this case and *State v. Embry,* 530 S.W.2d 401 (Mo. App.1975), and the other cases cited to us by the defendant. We find that the federal courts have permitted extensive comment upon the *failure* to provide handwriting exemplars, e.g., *United States v. Nix,* 465 F.2d 90, 93–94 (5th Cir.1972), cert. denied 409 U.S. 1013, 93 S.Ct. 455, 34 L.Ed.2d 307 (1972), but those cases do not quite reach the point made here. In this case, the trial court permitted the State to show, in effect, that the handwriting exemplars were not voluntarily given. The effect of the trial court's action was simply to neutralize the impression that defendant had volunteered to give specimens of his handwriting. The giving of Instruction No. 4—MAI–CR 2d 2.20—more than offset any prejudicial effect the trial court's action might have had. See *United States v. Dark,* 597 F.2d 1097, 1099[2] (6th Cir.1979), cert. denied 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 183 (1979).

We find no prejudicial error in any respect assigned here; accordingly, the judgment is affirmed.

MAUS, P.J., and BILLINGS, J., concur.