396 S.E.2d 471

**STATE of West Virginia**

v.

**Betty Jean KELLY.**

**No. 19368.**

Supreme Court of Appeals of West Virginia.

July 25, 1990.

W.A. Thornhill, III, Beckley, for Betty Jean Kelly.

Roger W. Tompkins, Atty. Gen., Joanna Tabit, Asst. Atty. Gen., Charleston, for State of W.Va.

MILLER, Justice:

The defendant below, Betty Jean Kelly, appeals her conviction in the Circuit Court of Raleigh County for forgery arising from her forging her husband's name to an appearance bond. She contends that the evidence was insufficient to support the conviction because she was authorized to sign her husband's name and because there was no showing that the legal rights of another were prejudiced by her actions. She also contends that the trial court erred in excluding certain opinion evidence and raises instructional error. We find no error warranting reversal, and we affirm the conviction.

The forgery charge arose out of Mrs. Kelly's attempt to secure the release from the Raleigh County jail of one Ronald Gene Daniel, who had been charged with first-degree murder and malicious wounding. Mr. Daniel's bond was set at $55,000, but surety given by others had reduced the amount necessary to obtain his release to $16,000.

On July 13, 1988, Mrs. Kelly inquired at the circuit clerk's office as to the amount outstanding on the bond. Upon being informed by a deputy circuit clerk of the amount, Mrs. Kelly produced a justification of surety showing that she and her husband, Garry Kelly, jointly owned real estate of sufficient value to satisfy the bond requirements. Mrs. Kelly signed the bond, but was informed by the clerk that Mr. Kelly would have to sign as well. Mrs. Kelly left the clerk's office, but reappeared fifteen or twenty minutes later with a short, bald man whom she introduced as her husband. When the deputy clerk asked if he was Garry Kelly, the man responded "yes" and signed the bond. Mr. Daniel was released a short time afterwards.

Approximately a week later, Mr. Kelly appeared at the circuit clerk's office demanding to know why the clerk had let someone sign his name to Mr. Daniel's bond. Mrs. Kelly was subsequently arrested on forgery charges.

Trial was conducted in the Circuit Court of Raleigh County on April 10 and 11, 1989. The evidence introduced to prove that someone other than Mr. Kelly had signed the bond included a handwriting expert who concluded that the signature on handwriting exemplars obtained from Mr. Kelly was not made by the same person who signed Mr. Daniel's bond. In addition, Mr. Kelly's surname had been misspelled in the bond as "Kelley." The deputy clerk testified that Mr. Kelly was not the person who had signed the bond in the clerk's office. Mr. Kelly himself testified that he was not in the clerk's office on July 13, 1988, and did not sign the bond.

Mrs. Kelly raised two defenses at trial. She asserted that there was no showing of prejudice to the legal rights of another resulting from the signatures on

the bond and that her husband had given her full authority to sign his name.[1] Mr. Kelly testified that he authorized his wife to sign his name, but admitted that he was unaware that his name had been signed on the bond until afterwards. Mrs. Kelly did not take the witness stand.

■ The crime of forgery is not defined by statute in West Virginia. W.Va.Code, 61–4–5 (1961), states, in pertinent part: "If any person forge any writing ... to the prejudice of another's right, ... he shall be guilty of a felony...."[2] The broad common law definition of forgery was stated in Syllabus Point 1 of *State v. Lotono*, 62 W.Va. 310, 58 S.E. 621 (1907):

"Forgery is the false and fraudulent making or altering of an instrument which would, if genuine, apparently impose a legal liability on another or change his legal liability to his prejudice."

*Accord Merchants Bank & Trust Co. v. Peoples Bank of Keyser*, 99 W.Va. 544, 130 S.E. 142 (1925). Implicit in this definition is the principle that the crime must be committed with an intent to defraud. *See State v. Barnhart*, 127 W.Va. 545, 33 S.E.2d 857 (1945); *State v. Austin*, 93 W.Va. 704, 117 S.E. 607 (1923).

■ In summary, then, to sustain a conviction for forgery under W.Va.Code, 61–4–5, the State must prove the following elements: (1) that the accused falsely made or altered a writing; (2) that he or she did so with intent to defraud; and (3) that the

writing so created or altered is of such a nature that if it were genuine it could prejudice the legal rights of another. *See generally* 36 Am.Jur.2d *Forgery* § 3 (1968); 4 C. Torcia *Wharton's Criminal Law* § 493 (14th ed. 1981).

Mrs. Kelly argues that in this case there was no proof of prejudice to another's legal rights. She relies on *State v. Nichols*, 177 W.Va. 483, 354 S.E.2d 415 (1987), in which the defendant, who had been convicted of uttering a forged prescription for drugs, made the same argument. The State asserted that the pharmacist who filled the prescription was the person whose legal rights were prejudiced. However, the pharmacist testified that he received fair market value for the drugs sold. He also indicated that there were no criminal, civil, or administrative sanctions that could be brought against him for unknowingly filling a forged prescription. In view of this evidence, we concluded that the State had failed to prove the element of prejudice and reversed the conviction.

In *Nichols*, there was no evidence of even the possibility of prejudice as a result of the false writing. As *Lotono* indicates, it is not necessary to show actual prejudice to the rights of another to sustain a forgery conviction. It is sufficient if there is intent to defraud and potential prejudice to the rights of another. This point was discussed in *State v. Talip*, 90 W.Va. 632, 635, 111 S.E. 601, 602 (1922), where we cited cases from other jurisdictions which held

---

1. Technically, because Mrs. Kelly did not sign her husband's name, she was an aider and abetter, or principal in the second degree, to the crime of forgery. The court below recognized that in *State v. Petry*, 166 W.Va. 153, 273 S.E.2d 346 (1980), we abolished the distinction at the indictment stage between a perpetrator, or principal in the first degree, and other criminal actors, such as principals in the second degree and accessories before the fact. Our decision was based on W.Va.Code, 61–11–6 (1923), which provides the same punishment for each category on conviction. Recently in *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989), we elaborated on this principle and pointed out that these distinctions still retain some validity to prove the offense from an evidentiary standpoint. No claim of error is asserted in this area.

2. W.Va.Code, 61–4–5, our general forgery statute, provides:

"If any person forge any writing, other than such as is mentioned in the first and third sections [§§ 61–4–1, 61–4–3] of this article, to the prejudice of another's right, or utter or attempt to employ as true such forged writing, knowing it to be forged, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in jail not more than one year and be fined not exceeding five hundred dollars."

Other forgery statutes include W.Va.Code, 61–4–1 (1923) (forgery of public records), W.Va.Code, 61–4–2 (1923) (forgery of official seals), and W.Va.Code, 61–4–3 (1923) (counterfeiting).

that it is "not essential to the crime of forgery that actual injury should have resulted, ... it was sufficient that any one might be or have been injured by the instrument."

In *State v. Marler,* 428 So.2d 954 (La. App.), *writ denied,* 433 So.2d 151 (La.1983), the defendant had forged another's name on his appearance bond. On appeal from his forgery conviction, he contended that since there had been no default on the bond, the conviction could not stand. The court, in rejecting this argument, stated:

> "Although no forfeiture did occur here, we find that the record supports the instant conviction. It reveals that defendant falsified another's signature on an appearance bond, resulting in possible prejudice to the rights of the surety on the bond as well as to the right of the State to charge defendant as a second DWI offender." 428 So.2d at 956.

Other courts dealing with forged appearance bonds have come to the same conclusion. *See Paris v. State,* 42 Ala.App. 82, 152 So.2d 694 (1963); *Shouse v. State,* 36 Ala.App. 614, 63 So.2d 722 (1952), *cert. denied,* 258 Ala. 499, 63 So.2d 728 (1953); *Davis v. State,* 111 So.2d 459 (Fla.App. 1959). *See generally,* Torcia, *supra* § 493 *et seq.*

■ In the present case, if the signature had been genuine, it obviously would have imposed legal liability on Mr. Kelly in the event of a default on the appearance bond. The State would have been able to recover from him the amount of the bond. Thus, we find that legal rights of another were potentially prejudiced by Mrs. Kelly's actions.

■ Mrs. Kelly also argues that if authority is given to sign someone's name, there can be no forgery, citing *State v. Sotak,* 100 W.Va. 652, 131 S.E. 706, 46 A.L.R. 1523 (1926). Even if we overlook the fact, as Mrs. Kelly does, that under the testimony, her husband authorized only her to sign his name and not the bald man, she still cannot prevail. *Sotak* involved a partnership agreement which the defendant asserted gave each partner an implied right to withdraw funds from a joint account by signing the partnership name. In *Sotak,* the defendant was found guilty of forgery because he exceeded the scope of his alleged authorization.

Here, there was evidence that Mr. Kelly had never in fact authorized Mrs. Kelly to sign his name on the bond before July 13, 1988. The State correctly points out that ordinarily the subsequent ratification of a forgery will not excuse the crime. As we stated in *State v. Austin,* 93 W.Va. at 715–16, 117 S.E. at 611–12:

> "No subsequent ratification by the party sought to be injured could in any way mitigate the guilt of the accused. 'So far as the right of the state to pursue and punish the forger as a criminal is concerned, it is certain that a subsequent ratification by the individual sought to be charged, will be unavailing to defeat it. Any undertaking to suppress the crime would, as has been seen, be contrary to public policy and void.' 1 Mechem, Agency, (2nd ed.) § 360."

*See also Merchants Bank & Trust Co. v. Peoples Bank of Keyser,* 99 W.Va. at 564–65, 130 S.E. at 150. Other courts have arrived at much the same result. *See, e.g., People v. Lucero,* 623 P.2d 424 (Colo.App. 1980); *State v. May,* 93 Idaho 343, 461 P.2d 126 (1969); *Finley v. Commonwealth,* 259 S.W.2d 32 (Ky.1953); *State v. Higgin,* 257 Minn. 46, 99 N.W.2d 902 (1959); *State v. Christopherson,* 36 Wis.2d 574, 153 N.W.2d 631 (1967); *Schiefer v. State,* 774 P.2d 133 (Wyo.1989).

■ The defendant also complains that the court erred in refusing to permit the jury to hear the testimony of an attorney who would have given an expert opinion with regard to the prejudice arising from the forged signature. After hearing the testimony *in camera,* the trial court ruled that the expert's opinions amounted to a conclusion of law and refused to allow the testimony to come before the jury.

In the main, the expert would have testified that if Mr. Daniel did not default on his appearance bond, there would be no prejudice to the sureties. The trial court was correct in rejecting this testimony because, as we have previously pointed out,

the test is not actual prejudice, but the potential prejudice to the legal rights of another.[3] *See State v. Marler, supra; State v. Talip, supra; State v. Lotono, supra.*

For the foregoing reasons, the judgment of the Circuit Court of Raleigh County is affirmed.

Affirmed.

---

**3.** The defendant also asserts certain instructional errors, but after a careful review, we find them to be without merit.