STATE of Missouri, Respondent,

v.

Tommy Alexander JOHNSON, Appellant.

No. WD 46249.

Missouri Court of Appeals,
Western District.

June 15, 1993.

Gary Brotherton, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and BRECKENRIDGE and HANNA, JJ.

HANNA, Judge.

The defendant was charged by way of information with forgery, § 570.090.1(1), RSMo 1986, a class C felony. The defendant filed a motion to dismiss the forgery charge for failing to state a cause of action, which was overruled by the trial court. Following a jury verdict of guilty, the court found the defendant a prior and persistent offender and sentenced him to three years imprisonment.

The evidence supporting the defendant's conviction was as follows. On December 13, 1991, state trooper Tim Tinnen clocked the defendant's vehicle on I–70 at 75 m.p.h. Trooper Tinnen stopped defendant's car and requested his driver's license. The defendant replied he did not have one and gave his name as James Dudley. The trooper ran the name through the computer and received a report that James Dudley was 6'2", a description which did not fit the defendant. The trooper informed the defendant that he was not telling the truth and asked for his true name. Defendant again replied that he was James Dudley, which caused the trooper to ask the female passenger in the defendant's car the driver's name and she replied that he was James Dudley.

The trooper returned to the patrol car and repeated the question to the defendant who then indicated that his real name was James Rooker. The name "Rooker" was run through the computer and the information received back indicated that name also was not true. The trooper confronted the defendant with this information and the defendant replied that he really was Mark Jones. The name "Jones" was entered into the computer, which gave a physical description similar to the defendant's. However, the driver's license of Mark Jones was shown as having been suspended.

The defendant was arrested and advised of his *Miranda* rights, which defendant indicated he understood. The defendant was transported to the Callaway County Sheriff's Department. Along the way, the defendant apologized for lying about his name and assured the patrolman that his name was Mark Jones and stated he gave the wrong name because his driver's license was suspended. During the booking procedure at the sheriff's department, the defendant was directed to sign his fingerprint card. Trooper Tinnen advised the defendant not to sign the print card marked "Jones" if it was not his actual name. The defendant became angry and defensive and Tinnen informed the defendant he would be charged with a felony if he did not sign his real name. The defendant signed the fingerprint card with the name "Mark Jones."

It was determined that at the time of his arrest, the defendant was test driving a car

from Route B Motors. Route B Motors was contacted to let them know of the vehicle's location. Trooper Tinnen was told that the defendant had given Route B Motors the name "Tommy Rooker." This caused Tinnen to again confront the defendant with this new information but the defendant replied that he was not Tommy Rooker. Tinnen then warned the defendant that it was his last chance and that he would make a new print card if Mark Jones was not his true name. The defendant insisted that he had signed his correct name.

Tinnen again contacted Route B Motors and learned that the defendant was employed at Popeye's Fried Chicken. The restaurant was contacted and said that the defendant's name was Tommy Johnson. Running a check under this name, it was discovered that defendant's driver's license had been revoked and a warrant issued for his arrest. Tinnen returned to the defendant and quietly said, "Tommy Alexander Johnson." The defendant replied, "Who's that? That's not me."

Trooper Tinnen left the sheriff's department with a photograph of the defendant to confirm his identification with the employees of Popeye's Fried Chicken. While on the way, Tinnen was called back to jail because the defendant admitted that he was, in fact, Tommy Johnson. Tinnen confronted the defendant with his motive for signing a false name and the defendant admitted that he did so because he knew of the outstanding warrant.

At trial, the defendant did not testify and called no witnesses in his defense. The jury found the defendant guilty of forgery and the court sentenced the defendant as a prior and persistent offender to a term of three years imprisonment. This court granted the defendant leave to file his notice of appeal out of time.

From the defendant's argument, we discern two challenges to his conviction under the forgery statute, § 570.090. The defendant claims that a "writing" within the meaning of § 570.090, does not include a document such as a fingerprint card and that the intent to defraud must be specific and directed to gain some financial advantage, as in business or commerce.

■ The defendant was charged with forgery under § 570.090.1(1), which in relevant part provides: "A person commits the crime of forgery if, with the purpose to defraud, he ... [m]akes, completes, alters or authenticates any writing so that it purports to have been made by another...." The requirements of forgery are (1) a false making of a writing, (2) a fraudulent intent, and (3) a writing capable of effecting a fraud. *State v. Hogshooter*, 640 S.W.2d 202, 204 (Mo.App.1982).

■ The parties suggest that the critical inquiry is the meaning of the word "writing." Section 570.010(13), RSMo 1986 defines "writing" as used in Chapter 570:

"Writing" includes printing, any other method of recording information, money, coins, negotiable instruments, tokens, stamps, seals, credit cards, badges, trademarks and *any other symbols of* value, right, privilege or *identification.* (emphasis added)

The Committee Comments following this section tell us that the definition of "writing" is taken from § 224.1 of the Model Penal Code and is designed merely to make more specific and clear those items to be considered writings. The Comment to the Model Penal Code, from which subparagraph (13) is copied, interprets "writing" comprehensively.[1] In 1979, Missouri repealed its catch-all phrase, "any writing of any kind having legal efficacy."[2] Missouri, like many other states, followed the lead of the Model Code when it enacted § 570.010(13). It feared an *ejusdem generis* interpretation if a catch-all listing of documents were made in the statute resulting in unintended omissions by court decision. The Model Code purposefully attempted a generic description of the sort of

---

**1.** Section 570.010(13) is copied verbatim from the Model Penal Code except our statute adds "negotiable instruments" along with money, coins, etc.

**2.** *See* § 561.011.1(1), RSMo 1959.

writings to be covered. The Model Code Comment states:

Also included in the Model Code offense are private records, accounts, letters, diaries, and other personal documents not purporting to have legal significance in the sense of a "note" or a "will." The phrase "any writing" is thus defined comprehensively and is meant to be interpreted comprehensively.

Model Penal Code § 224.1 comment.

Since our statute was duplicated from the Model Penal Code, we reason that our legislators intended a broad application of the statutory definition of a writing within the meaning of our forgery statute. We believe the word "writing" includes a law enforcement document such as a fingerprint card. This document is used, among other things, as a means of identification and the statutory definition refers to any other symbols of identification. Fingerprint cards are a symbol of identification.

Confidence in the integrity of documents used by public officials for identification purposes is of the utmost importance. Obviously, adverse and serious consequences follow if the records or documents are incorrect because someone has undermined the process by forging them. Thus, the public's confidence in the genuineness of the documents must extend to documents and records that are concerned with the public, as well as, business or commercial affairs. The language of the statute is sufficiently comprehensive to include the document involved here.

 It is apparent that the defendant signed another person's name to the fingerprint card in order to cover his own identification. Obviously, it was done to protect himself but the defendant maintains that his act did not have as its purpose to defraud another of some property interest. Defendant argues that to properly interpret the statute and to give effect to the legislature's intent, this statute must be considered in light of related statutes, as they may disclose its meaning. He maintains that since the forgery statute is contained in Chapter 570 and is surrounded by stealing and related offenses, the forgery statute has as its purpose to safeguard confidence in commercial and business documents and not fingerprint cards. We believe that the statute is not to be so narrowly construed and that the evidence satisfied the elements of the crime of forgery.

This court recently upheld a forgery conviction where the defendant forged a continuing education certificate. The court held defendant's action to be a fraud within the meaning of § 570.090. *State v. Patterson*, 849 S.W.2d 153 (Mo.App.1993). The defendant was an emergency medical technician and was obligated to fulfill certain continuing education credits. He submitted a false roster of attendees to the Department of Health, which included himself as an attendee of the classes. The issue was whether he could be guilty of a purpose to defraud within the statutory meaning since the Department of Health had no property interest of which it could be defrauded. This court held that the defendant practiced a fraud against the Missouri Department of Health, as well as upon the public, when he submitted a forged list of his continuing education units. *Id.*

 The intent to defraud need not be an intent to defraud some particular person, the intent need only be a general intent to defraud and the act of forgery itself, if shown, implies such an intent. *State v. Wakefield*, 682 S.W.2d 136, 143 (Mo.App.1984). An intent to defraud may be inferred from the circumstances. *See Hogshooter*, 640 S.W.2d at 204.

In *Wakefield*, an automobile's vehicle identification number (VIN) was the subject of defendant's forgery conviction and the court *held the VIN* was included within the language of § 570.090. The court held that the intent to defraud, which is a necessary element of forgery, is not a specific intent to defraud some particular person. The case decision requires only that the state must demonstrate a general intent to defraud. *Id.* at 143. The intent to defraud is not limited to obtaining money or property; it is sufficient if the forged instrument is to the prejudice of the rights of some person. 37 C.J.S. Forgery § 4 (1943).

The fraud committed here was against the government; in fact, the public, because the defendant's actions frustrate the administration of justice. As we stated in *Patterson*, the defendant practiced a fraud against not only the governmental agency but also against the public. The evidence of intent to defraud was sufficient to sustain a conviction under § 570.090.1.

Finally, the defendant claims that the court erred when it defined "reasonable doubt" found in MAI–CR3d 302.04 as "proof that leaves you firmly convinced of the defendant's guilt." Because the defendant failed to object at trial, he requests plain error review in order to preserve the point in the event *State v. Griffin*, 848 S.W.2d 464 (Mo. banc 1993) is overruled. We decline to review the issue because our Supreme Court has ruled on the matter repeatedly and found no error. *State v. Murray*, 744 S.W.2d 762, 771 (Mo. banc 1988), *cert. denied*, 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988). Point waived.

The judgment of the trial court is affirmed.

All concur.