452 S.E.2d 70

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Mark Wayne PHALEN, Defendant Below, Appellant.**

No. 22077.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 1994.

Decided Nov. 21, 1994.

268

Darrell V. McGraw, Jr., Atty. Gen., Silas B. Taylor, Sr. Deputy Atty. Gen., Victor S. Woods, Legal Intern, Charleston, for appellee.

Herbert L. Hively, II, Johnson Law Office, Charleston, for appellant.

McHUGH, Justice:

The appellant, Mark Wayne Phalen, was convicted of one count of forgery pursuant to *W.Va.Code*, 61–4–5 [1961] in the Circuit Court of Clay County, and was sentenced by an order dated December 22, 1992, to a one to ten year prison term.[1] The appellant appeals his forgery conviction.

## I.

On February 6, 1991, the appellant was stopped by the police for driving under the influence of alcohol (hereinafter "DUI") (at some point during the arrest and processing the appellant registered .239 on a breathalyzer test). After the appellant was stopped, he informed the police that he did not have a driver's license. Additionally, he informed the police that his name was Harry C. Shultz. Harry C. Shultz is the appellant's brother-in-law.

At approximately 10:30 a.m. the police processed the appellant at the sheriff's office. During the processing the appellant gave a deputy the birth date and social security number for Harry C. Shultz. Assuming that the appellant was Harry C. Shultz, the deputy called the Department of Motor Vehicles to check Mr. Shultz's driving record which came back clear. In reality, the appellant's license had been revoked based upon three arrests for DUI.

The deputy fingerprinted the appellant, completed a criminal complaint for a first offense DUI for Mr. Shultz, and completed a court disposition report. The appellant signed "Harry C. Shultz" to the fingerprint card.

The appellant, at his initial appearance before a magistrate, signed the name Harry C. Shultz to his constitutional rights sheet.

1. The appellant was paroled on July 19, 1993.

The magistrate set bond at $500 and completed a jail commitment for Mr. Shultz.

At approximately 11:40 a.m., as the appellant was leaving the magistrate's office, he informed the deputy that he was not Mr. Shultz. However, the appellant refused to disclose his true identity. Therefore, the appellant was searched and his true identity was discovered.

The appellant was then re-arraigned before the magistrate and charged with third offense DUI, driving on a suspended license for DUI, forgery, and obstructing an officer. Eventually, the alcohol related driving charges were dismissed because they were not timely prosecuted.

## II.

The issue before us is whether there was sufficient evidence of all the elements of the crime of forgery to support the jury verdict of forgery. For reasons explained below, we find that the evidence was sufficient to support the jury verdict.

■ At the outset, we point out the standard of review:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

Syl. pt. 1, *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978). With this in mind, we will analyze the two arguments made by the appellant.

## A.

The first argument is that the State failed to prove there was any injury or probability of injury to an individual or to the State;

therefore, the State failed to prove all of the elements of the crime of forgery. We disagree.

■ *W.Va.Code*, 61–4–5 [1961] is the statutory provision which makes forgery a crime:

If any person forge any writing, other than such as is mentioned in the first and third sections [§§ 61–4–1, 61–4–3] [2] of this article, to the prejudice of another's right, or utter or attempt to employ as true such forged writing, knowing it to be forged, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than one nor more than ten years, or, in the discretion of the court, be confined in jail not more than one year and be fined not exceeding five hundred dollars.

(footnote added). However, the elements of forgery were more fully explained by this Court in syllabus points 1 and 2 of *State v. Kelly*, 183 W.Va. 509, 396 S.E.2d 471 (1990):

1. To sustain a conviction for forgery under W.Va.Code, 61–4–5 (1961), the State must prove the following elements: (1) that the accused falsely made or altered a writing; (2) that he or she did so with intent to defraud; and (3) that the writing so created or altered is of such a nature that if it were genuine it could prejudice the legal rights of another.

2. It is not necessary to show actual prejudice to the rights of another to sustain a forgery conviction. It is sufficient if there is intent to defraud and potential prejudice to the rights of another.

The appellant argues that his actions did not actually prejudice the rights of his brother-in-law since he admitted to giving a false name within an hour and a half. Therefore, he did not commit forgery since evidence of prejudice was lacking.

■ We disagree. Syllabus point 2 of *Kelly* clearly states that the State does not need to show that a person was actually prejudiced by the defendant's actions. All the State needs to prove is that the defendant

---

**2.** *W.Va.Code*, 61–4–1 [1923] concerns the forgery of a public record, certificate, return or attesta-

tion of a court or officer. *W.Va.Code*, 61–4–3 [1923] concerns counterfeiting.

had the intent to defraud and potentially prejudice another's rights.

Additionally, as the State points out, this Court has stated "[u]nder Code, 61–4–5, an attempt to utter a forged instrument, knowing it to be forged, is made a felony." Syl. pt. 1, *State v. Runnion*, 122 W.Va. 134, 7 S.E.2d 648 (1940). Therefore, based on the above language in the *Runnion* case, even if the forgery is not successful the appellant can still be found guilty of forgery. *See also United States v. Jenkins*, 347 F.2d 345, 347 (4th Cir.1965) ("The lack of success of a scheme to defraud is no defense to the charge."). *See generally* 36 Am.Jur.2d *Forgery* § 26 (1968).

■ In the case before us, when viewing the evidence in the light most favorable to the prosecution, there was evidence to support the element of intent to prejudice. The record reveals that there was evidence to support a finding by the jury that when appellant gave the police Mr. Shultz's name he had the intent of prejudicing Mr. Shultz's legal rights to protect himself. The fact that Mr. Shultz was not actually prejudiced does not matter. The jury was made aware of the fact that the appellant admitted he was not Mr. Shultz within one hour and a half of giving the false name; however, the jury still found forgery to have occurred. Obviously, if the true identity of the appellant had not been discovered, Mr. Shultz's legal rights would have been prejudiced by the DUI charge which was filed utilizing his name.

Furthermore, the State points out that its rights were prejudiced. In making its argument the State cites to a Missouri Court of Appeals case in which the court held that "[t]he fraud committed ... [by signing a false name to a fingerprint card is] against the government; in fact, the public, because the defendant's actions frustrate the administration of justice." *State v. Johnson*, 855 S.W.2d 470, 474 (Mo.Ct.App.1993). The Missouri Court of Appeals points out "[c]onfidence in the integrity of documents used by public officials for identification purposes is of the utmost importance. Obviously, adverse and serious consequences follow if the records or documents are incorrect because someone has undermined the process by

forging them." *Id.* at 473. *See also Thornton v. State*, 636 N.E.2d 140 (Ind.Ct.App. 1994).

We agree. Accordingly, we hold that it is a jury question as to whether the requisite intent to commit forgery, pursuant to *W.Va. Code*, 61–4–5 [1961], is present when a person who has given a false name later admits the name given was false. Additionally, a jury may find that giving a false name on a police fingerprint card constitutes forgery since the act prejudices the legal rights of the State by frustrating the State's authority to administer justice. Therefore, we do not find that the evidence, submitted in the case before us, was manifestly inadequate to support the jury's determination that the appellant was guilty of forgery.

### B.

■ The second argument is whether the appellant was too intoxicated to form the intent to defraud. This Court has stated that "[v]oluntary drunkenness does not ordinarily excuse a crime." Syl. pt. 8, *State v. Bailey*, 159 W.Va. 167, 220 S.E.2d 432 (1975), *overruled on other grounds, State ex rel. D.D.H. v. Dostert*, 165 W.Va. 448, 269 S.E.2d 401 (1980). However, in *State v. Keeton*, 166 W.Va. 77, 272 S.E.2d 817 (1980), this Court noted that voluntary drunkenness may reduce the degree of crime or negate a specific intent. Additionally, this Court pointed out that this is a jury question. *Id.* at 82–84, 272 S.E.2d at 820–21.

In the case before us, the trial court gave the following instruction to the jury:

The jury is instructed that criminal intent is a necessary and essential element of the crime of forgery and, like every other element of the crime, must be proved beyond a reasonable doubt. If the jury believes from the evidence at the time of the alleged forgery the Defendant was in a state of intoxication and that while in such condition he did not know what he was doing, he is not capable of exercising criminal intent and then the jury should acquit the Defendant.

Therefore, the jury did properly consider whether or not the appellant's intoxication

negated the specific intent of committing forgery.

The evidence before the jury was as follows. The appellant presented evidence to the jury that his blood alcohol level was .239, and that he had taken lithium on the day of his arrest. Additionally, the appellant presented evidence that he was making statements at the time of his arrest such as "Jerry Oxer, MIA 1968" and "Maybe Siberia." The appellant is a disabled veteran of the United States Army who was stationed in Vietnam. The appellant's counselor at the Veteran's Center testified that the appellant is an alcoholic who suffers from a post-traumatic stress disorder. The appellant testified that he had no memory of being arrested, fingerprinted or arraigned.

However, the State presented evidence that the appellant correctly remembered his brother-in-law's social security number and birth date. Also, the appellant specifically requested a personal recognizance bond when appearing before the magistrate. Furthermore, the deputy and the magistrate testified that the appellant appeared coherent and aware of what was occurring.

Clearly, there was evidence to support the State's contentions. Accordingly, we hold that the evidence indicating that the appellant had specific intent to commit forgery was not manifestly inadequate.

Since the appellant raises no errors which warrant reversal, we affirm the appellant's forgery conviction.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired J., sitting by temporary assignment.

CLECKLEY, J., concurs and reserves the right to file a concurring opinion.

CLECKLEY, Justice, concurring:

I concur only to point out my objection to the use of *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978), as the appellate standard for reviewing an insufficiency of the evidence assignment of error. In my judgment, *Starkey* is incorrect when it states that

"[t]o warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done." Syllabus Point 1, in part, *State v. Starkey, supra.* This standard, "manifestly inadequate and that consequent injustice has been done" (hereinafter referred to as the "manifest injustice" standard), is too high of an evidentiary standard and conceivably could be unconstitutional.

The "manifest injustice" standard is to be used only in collateral proceedings such as a habeas corpus action when dealing with assignments of error other than insufficiency of the evidence or when the defendant has failed to preserve the issue in the trial court by not making a motion for judgment of acquittal under Rule 29 of the West Virginia Rules of Criminal Procedure. In *United States v. Stevens,* 817 F.2d 254, 255 n. 1 (4th Cir.1987), the Fourth Circuit correctly articulates the proper use of the "manifest injustice" standard:

"As to all the arguments concerning the sufficiency of the evidence, we note in passing that defendant made no motion for judgment of acquittal, Rule 29, Fed. R.Crim.P., and our examination is technically limited to determining whether or not manifest injustice would occur." (Citation omitted).

*See also Lockhart v. United States,* 183 F.2d 265 (4th Cir.1950). As gleaned from the Fourth Circuit, the "manifest injustice" standard is more appropriate for "plain error" situations under Rule 103(d) of the West Virginia Rules of Evidence; Rule 51 of the West Virginia Rules of Civil Procedure, and Rule 52 of the West Virginia Rules of Criminal Procedure. Justice Miller, the author of the *Starkey* opinion, lifted "the manifest injustice" objectionable language from Syllabus Point 1 of *State v. Bias,* 156 W.Va. 569, 195 S.E.2d 626 (1973). A fair reading of *Bias* and *Starkey* suggests that the only time a conviction should be interfered with by an appellate court is when there is a total lack of evidence of the defendant's guilt or the de-

fendant has proved his innocence.* Of course, at the time *Bias* was decided the applicable standard for appellate review in this country was the "total lack of evidence" standard. *See Thompson v. City of Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). Today, "[t]he test to determine the 'sufficiency' of evidence is no longer the 'total lack of evidence' test. The test now is whether a reasonable fact-finder must have a reasonable doubt." 2 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* at 292 (2nd ed. 1993). (Citations omitted). Accordingly,

"[i]n *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), a majority of the court took the position that the sufficiency of evidence to support a state criminal conviction is an issue that may be litigated in federal habeas corpus proceedings. Although it found the evidence sufficient in the case before it ... it concluded that the traditional test of *Thompson* ... was inadequate to protect against violations of the reasonable doubt requirement. It announced that federal habeas relief is required if the federal court finds 'that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.' [443 U.S. at 324, 99 S.Ct. at 2791–92, 61 L.Ed.2d at 576–77. (Footnote omitted).]" 2 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 12–2(C)(2) at 449–50 (3rd ed. 1994).

I conclude by suggesting that this Court overrule *Starkey* and insert in its place language consistent with *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); to-wit: on appeal of a criminal conviction, this Court must consider the evidence in the light most favorable to the prosecution and ask whether any rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt.

Because I believe that the evidence under the above standard was sufficient to support the verdict, I concur.

---

* I believe there is more than a linguistic difference between "actual innocence" and a finding that no rational juror would have convicted the defendant under a reasonable doubt analysis. The "rational juror" standard is akin to the "clearly erroneous" standard that we use to review most trial and factual decisions from a lower court. The standard of "actual innocence" was approved by a majority of the United States Supreme Court in *Sawyer v. Whitley*, —— U.S. ——, ——, 112 S.Ct. 2514, 2517, 120 L.Ed.2d 269, 277–78 (1992). Although *Sawyer* used both these standards, and sometimes interchangeably, it is clear that in the context of death eligibility cases "actual innocence" is a much narrower concept than that envisioned by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).