607 S.E.2d 471

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Michael Wayne FISKE, Defendant Below, Appellant.**

**No. 31714.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 2004.

Decided Dec. 1, 2004.

Darrell V. McGraw, Jr., Attorney General, Colleen A. Ford, Assistant Attorney General, Charleston, West Virginia, Attorney for Appellee.

Paul G. Taylor, Esq., Martinsburg, West Virginia, Attorney for Appellant.

PER CURIAM:

This is an appeal by Michael Wayne Fiske from an order of the Circuit Court of Morgan County sentencing him to two concurrent 2 to 10 year sentences in the State Penitentiary for forgery and uttering. On appeal, the appellant claims, among other things, that the evidence adduced by the State failed to prove the allegations of the indictment and

that in light of this, the circuit court should have directed a verdict of acquittal for him.

## I.

### FACTS

On June 21, 2002, the appellant, who is the grandson, and adopted son, of Carl G. Fiske, II, entered a 7–eleven store in Morgan County, West Virginia, and presented a check for $33.92 on an account registered in the name of his grandfather, Carl G. Fiske, II. It appears that he had signed the check "Carl G. Fiske, II." Later the same day, the appellant returned to the store and asked the clerk in the store if she could hold the check. He indicated that he wanted to give cash and get the check back. The clerk had already deposited the check in the safe and told the appellant that he would have to speak to the store manager, Rhoda Kyne, who was not present at the time.

The clerk left a note for Ms. Kyne and explained what had occurred. Ms. Kyne, upon reading the note, had a "hunch" that something was amiss and contacted the bank on which the check was drawn. She learned that the branch of the bank identified on the check had been closed, and she thereupon called the Berkeley Springs Police Department to report the incident.

After the Berkeley Springs Police Department investigated the situation, the appellant was indicted for uttering and forgery. Count I of the indictment stated that Michael Wayne Fiske:

[D]id knowingly and feloniously utter and attempt to employ as true, to the prejudice of the rights of Carl G. Fiske, II, a forged writing, to wit: check # 2846, written and purported to be drawn on the account of Carl Fiske, II, at Citizens Bank of Maryland, Laurel, Maryland, made payable to 7–11, in the amount of $33.92 (thirty three dollars and ninety two cents), in the following form: (see attached document A), by presenting the same for payment, when the said MICHAEL WAYNE FISKE knew that the signature of Carl G. Fiske, II was forged thereon, thereby committing the crime of uttering, in violation of Chapter 61, Article 4, Section 5 of the West

Virginia Code, as amended, and against the peace and dignity of the State.

Count II of the indictment charges that the appellant:

[D]id falsely, intentionally, willfully, knowingly and feloniously forge, make and sign a writing, with the intent to defraud and to the legal prejudice of the rights of Carl G. Fiske, II, to-wit: a personal check ... thereby committing the crime of forgery, a violation of Chapter 61, Article 4, Section 5, of the West Virginia Code, as amended, and against the peace and dignity of the State.

The appellant was subsequently tried on the indictment before a jury, and during his trial, the State introduced the testimony of the clerk who had initially received the check from the appellant. The clerk testified that the appellant had delivered the check to her. She also testified about the appellant's return to the store later in the day and his request that the check be returned.

Additionally, the State adduced the testimony of the store manager, Rhoda Kyne as to the information which she had received by way of the note from the clerk and as to her subsequent actions in investigating the check and reporting the incident to the Berkeley Springs police.

A third witness called by the State was Carl G. Fiske, II, the appellant's grandfather, and adoptive father, and the individual on whose account the check was drawn. When asked whether he had signed the check, he indicated that he had not, and when shown the check and asked whether the signature was his, he stated that it was not. He was then asked if he had authorized anybody to sign the check for him, he replied: "I am not sure. I have sugar diabetes and I have been sick in bed for about two weeks before he come up and I don't know if I told him [the appellant] to sign it or not."

On cross-examination, Mr. Fiske was asked whether he wanted to press charges against his son, the appellant. Mr. Fiske responded that he did not want to press charges and that he had so indicated to a police officer who had investigated the check. He also stated that he had told the prosecut-

ing attorney that he did not wish to press charges. Finally, Mr. Fiske was asked whether he felt that his son was trying to prejudice his rights or hurt him in some way by signing the check. He stated that he did not.

On re-cross examination, Mr. Fiske reiterated key portions of his prior testimony. The testimony proceeded as follows:

Your testimony is that Michael [the appellant] did not intend to prejudice you in any way, is that correct?

A. No, he didn't.

Q. Have you, in fact, been prejudiced in any way by this except for having to be here today?

A. Just inconvenienced, that is all.

Q. The inconvenience of having to show up on a day like today?

A. Yes, I would have—I would have paid the thing off back when and forgotten the whole thing.

At the conclusion of the State's evidence, counsel for the appellant moved that the trial court direct a verdict of not guilty. He argued that the counts of the indictment charged the appellant with prejudicing the rights of Carl G. Fiske, II, and the evidence adduced by the State plainly showed that he had not prejudiced those rights. The court denied that motion.

As has previously been stated, the appellant in the present appeal claims, among other things, that the trial court erred in not directing a verdict for him at the conclusion of the State's evidence.

## II.

### STANDARD OF REVIEW

In Syllabus Point 1 of *State v. Starkey*, 161 W.Va. 517, 244 S.E.2d 219 (1978), this Court stated:

In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with

a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done.

*See also,* Syllabus Point 1, *State v. Phalen*, 192 W.Va. 267, 452 S.E.2d 70 (1994).

## III.

### DISCUSSION

In Syllabus Point 2 of *State v. Kelly*, 183 W.Va. 509, 396 S.E.2d 471 (1990), the Court indicated that in the forgery context: "It is not necessary to show actual prejudice to the rights of another to sustain a forgery conviction. It is sufficient if there is intent to defraud and potential prejudice to the rights of another."

As has been previously indicated, the indictment in the present case specifically alleged that the appellant uttered and forged the check in issue "to the prejudice and rights of Carl G. Fiske, II." There is no question that the appellant wrote the check in question and signed it with the name of Carl G. Fiske, II. The question is whether he actually prejudiced the rights of Carl G. Fiske, II, or intended to prejudice those rights.

As stated in Syllabus Point 3 of *State v. Knight*, 168 W.Va. 615, 285 S.E.2d 401 (1981): "In order to secure a conviction the State must prove each and every element of the crime charged beyond a reasonable doubt."

A close examination of the evidence adduced in the present case suggests, first, that Carl G. Fiske, II, might have authorized the appellant to sign the check in question in his behalf. When asked whether he had authorized anyone to sign the check for him, Mr. Fiske responded that he was not sure. He explained that he had been sick and said, "I don't know if I told him to sign it or not."

Additionally, the evidence shows unequivocally that Carl G. Fiske, II, even if he did not explicitly authorize the signing of the check, did not believe that the appellant had intended to defraud him or that he had been prejudiced in any way by the appellant's actions.

Implicit in his testimony was the fact that because the appellant was his son, he condoned what the appellant had done and that he felt what the appellant had done was within the scope of their relationship.

In view of this, this Court believes that the evidence adduced by the State was inadequate to establish beyond a reasonable doubt that Mr. Fiske's rights were prejudiced by the appellant's actions, or that the appellant had intended to prejudice those rights.

While it may be argued that the 7–Eleven store might have, in some way, been prejudiced by what occurred, it appears that the check in issue was never presented for payment and no evidence of prejudice to the 7–Eleven was developed during trial. Additionally, it appears that the appellant was not notified that such was an issue in the case and did not come to trial prepared to defend against that claim.

Under the overall circumstances of this case, this Court believes that the evidence was inadequate to establish the defendant's guilt beyond a reasonable doubt, and that to convict the appellant upon the evidence adduced resulted in consequent injustice. For this reason, the Court believes that the trial court should have entered a verdict of acquittal for the defendant and that the defendant's conviction must now be reversed.

For the reasons stated, the judgment of the circuit court is reversed, and this case is remanded to the circuit court with directions that the circuit court enter a judgment of acquittal for the appellant.[1]

Reversed and remanded with directions.

---

1. The Court notes that the appellant makes a number of other assignments of error in this case dealing with possible defects in the indictment, hearsay evidence, and the nature of a recidivist colloquy which was conducted. However, in view of the fact that the evidence adduced by the State, when viewed in the light most favorable to the State, in this Court's opinion, was inadequate to support the conviction, this Court does not believe that it is necessary to discuss those other errors.