**STATE of Missouri, Respondent,**

v.

**Kenneth BURNETT, Appellant.**

No. WD 54610.

Missouri Court of Appeals, Western District.

June 23, 1998.

Irene Karns, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Catherine Chatman, Asst. Atty. Gen., Jefferson City, for Respondent.

HANNA, Presiding Judge.

The defendant, Kenneth Burnett, was convicted of forgery, § 570.090,[1] and sentenced to one year imprisonment following a bench trial in the circuit court of Clay County. The defendant makes two separate arguments concerning the sufficiency of the evidence to support his conviction.

In order to convict a defendant of forgery, the state must present the following evidence: (1) a false making of a writing; (2) a fraudulent intent; and (3) a writing capable of effecting a fraud. *State v. Hogshooter*, 640 S.W.2d 202, 204 (Mo.App.1982)(construing § 570.090.1(1)).

In reviewing whether the evidence is sufficient to convict a defendant of a particular crime, this court must consider all of the evidence, together with all reasonable inferences drawn therefrom, in the light most favorable to the verdict and disregard all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993); *State v. Sumowski*, 794 S.W.2d 643, 645 (Mo. banc 1990). "The standard for reviewing the sufficiency of the evidence in a criminal case when tried by a judge is the same as when reviewing a jury-tried case." *State v. Lauer*, 955 S.W.2d 23, 25 (Mo.App. 1997). This court neither weighs the evidence, nor determines the reliability or credibility of witnesses. *State v. Idlebird*, 896 S.W.2d 656, 660–61 (Mo.App.1995). Moreover, "[w]here the record contains sufficient evidence to permit a rational trier of fact to find the defendant guilty beyond a reasonable doubt, the verdict will not be disturbed

on appeal." *State v. Brokus*, 858 S.W.2d 298, 300–01 (Mo.App.1993).

The facts stated in the light most favorable to the conviction are that on April 14, 1996, Officer Matthew Voegler of the Pleasant Valley Police Department stopped a car which appeared to have "improper registration." Officer Voegler located a driving license on Barbara Jett's person bearing the name of Pamela Carolson. Jett admitted that her license was suspended. She was then arrested and placed in the back seat of Officer Voegler's patrol car. The officer then asked the defendant, who was a passenger, for identification. The defendant presented a Kansas driving license with his picture on it, but bearing the name of Stephen Hamm. The officer took the license and ran a check which determined that it was a valid license and that there were no outstanding warrants. He returned the license to the defendant.

After this exchange, Officer Bob Lewis of the Claycomo Police Department arrived. At this point, Jett gave permission to the officers to release the car to the defendant. The defendant, however, appeared drowsy and the car smelled of liquor. As a result, Voegler administered a field sobriety test, which the defendant failed. The officers decided to give the defendant a courtesy ride back to the police station. Officer Lewis did a routine pat-down of the defendant before he put the defendant in the back of the patrol car. The officer found a box of .22 caliber shells and a ring containing numerous vending machine keys. During this pat-down, Voegler was conducting an inventory search of Jett's car at the scene and found a laminating device, another ring of keys, a lock-picking tool and a construction company check made payable to Stephen Hamm. The defendant claimed the check was his. The defendant was arrested and placed in the back of the patrol car.

At the police station, a number of papers were found on the defendant including: a pawn shop receipt bearing the name of Kenneth Burnett, two personal checks made out to Kenneth Burnett, a bail enforcement iden-

---

1. All statutory references are to the Missouri Revised Statutes, 1994, unless otherwise indicated.

tification bearing another man's name, a Social Security card with a woman's name, an employee identification card with another woman's name, and a parole and probation officer's card. Officer Voegler then ran the name Kenneth Burnett through the computer, and discovered that his driving license had been revoked, and that Burnett had an extensive criminal history. When asked if he was Kenneth Burnett, the defendant admitted that he was.

Voegler then realized that the Kansas driving license bearing the name Stephen Hamm was not among the inventoried items taken from the defendant. Lewis went to check his patrol car and found torn up bits and pieces of a driving license on the floorboard directly beneath where the defendant had been sitting.

■ The defendant first argues that there was insufficient evidence to support his conviction because the state has not proven beyond a reasonable doubt that he had altered Stephen Hamm's driving license. He argues that the evidence presented establishes two equally valid inferences, one which establishes his guilt and one which establishes his innocence. Thus, the evidence cannot establish as a matter of law, guilt beyond a reasonable doubt. *State v. Alul,* 948 S.W.2d 215, 217 (Mo.App.1997); *State v. Dooley,* 919 S.W.2d 539, 541 (Mo.App.1995).

The defendant suggests that two equally plausible inferences may be drawn from his actions in destroying the license: (1) that it was destroyed because he had altered it; and (2) that he destroyed an unaltered license because he wanted to avoid problems when he went to the police station.[2] These inferences arise from the direct evidence that the defendant tore up what appeared to be a Kansas driving license.[3] Irrespective of whether there were two equally plausible inferences that could be drawn from this evidence, there was sufficient other evidence of the defendant's guilt.

■ The state presented the following evidence in support of its position. Voegler testified that the defendant had given him a Kansas driving license bearing the name Stephen Hamm, but with the defendant's picture on it. The officer testified, positively, that the photo on the driving license was the defendant's picture.[4] Additionally, Voegler testified that the defendant identified himself as Stephen Hamm. The defendant had several miscellaneous identification cards on his person when he was arrested. Among other items found in the car was a laminating device, which would have provided the defendant with the means to alter a driving license. The fact finder could reasonably infer from this evidence that the defendant had placed a photo of himself on the Kansas driving license of Steven Hamm. This evidence, coupled with the officer's testimony that the photo on the license was that of the defendant, provided the fact finder with substantial evidence to find that the defendant had altered the license. Thus, it is not necessary to determine what inference, if any, the court may have drawn from the evidence that the defendant tore up Hamm's driving license. It is within the fact finder's province to believe all, some, or none of the witness' testimony in arriving at its decision. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). There was sufficient evidence to support the fact that the defendant altered the driving license of Steven Hamm. Point denied.

■ The defendant next contends that there was insufficient evidence that he intended to defraud Officer Voegler when he presented Hamm's driving license. He argues that when he misidentified himself to

---

**2.** The question of whether two equally valid inferences which can be drawn from the evidence was laid to rest in *State v. Grim,* 854 S.W.2d 403 (Mo. banc), cert. denied, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993); *State v. Chaney,* 967 S.W.2d 47, 54 (Mo. banc 1998).

**3.** Officer Lewis testified that his patrol car had been cleaned before he responded to the call that evening, and that he found the bits of paper after the defendant had been a passenger in it. He also testified that the defendant had been left unattended in the patrol car for a period of time.

**4.** In contrast, the defendant testified that he never gave the officer a Kansas license identifying him as Stephen Hamm. He also claimed that he had no picture identification on him and that he had given his real name from the outset. The defendant testified that he was not intoxicated during the encounter.

the police, it did not frustrate the administration of justice. The defendant's claim focuses on the second element, fraudulent intent. He suggests that there was no intent to defraud because when a background check was done under his real name, there were no outstanding warrants for his arrest. Thus, he had no intent to mislead the police.

■ The intent to defraud may exist where property rights are not involved. In the case of *State v. Patterson*, Patterson was obligated to fulfill certain continuing education credits in order to qualify for relicensure as an emergency medical technician. 849 S.W.2d 153, 155 (Mo.App.1993). He submitted a false roster of attendees, which included his name, to the Department of Health. The Department of Health relied on the false rosters in issuing a certificate stating he had satisfied his educational requirements. The court observed that the intent to defraud requirement of the forgery statutes extends to intangible rights, and goes beyond cases of pecuniary fraud to reach cases of a general dishonest or corrupt intent. *Id.* at 155. The court held that the knowing use of the forged papers illustrated a general intent to deceive the general public, because it falsely attested to the defendant's qualifications as an emergency medical technician. *Id.* The court noted that using forged papers with the general intent to deceive the Department of Health, and to induce it to certify the defendant's eligibility for re-certification, comes within the term "purpose to defraud," as used in § 570.090.1. *Id.*

Also, in *State v. Johnson*, the defendant was stopped for speeding and told the officer that he did not have his driving license on his person. 855 S.W.2d 470, 471 (Mo.App.1993). Initially, the defendant gave the officer three different names. When the defendant told the police his real name, a background check uncovered an outstanding arrest warrant. *Id.* at 471–72. This court held that the intent to defraud need not be directed at a single person, it need only be general to defraud, and the commission of the forgery itself implies such an intent. *Id.* at 473. This court stated:

Confidence in the integrity of documents used by public officials for identification purposes is of the utmost importance. Obviously, adverse and serious consequences follow if the records or documents are incorrect because someone has undermined the process by forging them. Thus, the public's confidence in the genuineness of the documents must extend to documents and records that are concerned with the public, as well as, business or commercial affairs.

*Id.*

The defendant chose to give the police officer false identification to hide his identity in order to frustrate the investigation by the police. The police ran a background check under the false name of Stephen Hamm. The defendant intended to drive Jett's car after she was arrested, despite the fact he knew that his Missouri driving license was suspended.

When reviewing the evidence, this court must consider all of the evidence along with reasonable inferences, in the light most favorable to the state. *Grim*, 854 S.W.2d at 405; *Sumowski*, 794 S.W.2d at 645. We conclude that there was substantial evidence that the defendant deliberately intended to defraud within the meaning of the statute. Point denied.

Judgment affirmed.

LAURA DENVIR STITH and EDWIN H. SMITH, JJ., concur.