Pamela K. CAROTHERS, Appellant,

v.

Dennie L. CAROTHERS, Respondent.

No. WD 55404.

Missouri Court of Appeals,
Western District.

Oct. 13, 1998.

Tom Hensley, Kirksville, for appellant.

James McConnell, Shelbina, for respondent.

Before SMART, P.J., and ELLIS and HOWARD, JJ.

ELLIS, Judge.

Pamela Carothers appeals from the dismissal of her action seeking damages from her former husband under § 542.418.2.[1]

While they were married, Pamela and Dennie Carothers shared a residence on Route # 3 in Macon, Missouri. At some point between October 1, 1991 and May 3, 1992, Dennie placed a voice-activated recording device on a telephone located in that residence. Pamela was unaware that the device existed or that it was recording her telephone conversations, nor did she ever give permission for such recording. Over a seven month period, the device recorded multiple telephone conversations to which Pamela was a party. Some of the tapes of these conversations were later used by Dennie in the couple's dissolution proceedings.

On September 27, 1996, Pamela brought this action in Circuit Court of Macon County seeking damages for illegal wiretapping pursuant to § 542.418.2(2)(a). On November 25, 1996, Dennie filed a motion to dismiss Pamela's petition for failure to state a claim upon which relief may be granted. On December 29, 1997, the circuit court entered an order dismissing Pamela's action.

In reviewing this action, we must first determine *sua sponte* if the judgment entered below is appealable to this court. The trial court's decision, filed December 29, 1997, was styled *"Judgment Dismissing Petition For Damages."* The court set out five findings, and concluded "the court hereby orders, adjudges and decrees that Plaintiff's Petition for Damages be and is hereby dismissed at the cost of Plaintiff." There is no indication in the decision as to whether it is with or without prejudice. Missouri Supreme Court Rule 67.03 states that "[a]ny involuntary dismissal shall be without prejudice unless the court in its order for dismissal shall otherwise specify." Mo. R. Civ. P. 67.03 (1998). In the absence of a contrary indication, the underlying judgment is therefore a dismissal without prejudice.

The general rule is that a dismissal without prejudice is not a final judgment and

---

1. All statutory references are to RSMo 1994 unless otherwise noted.

is therefore not appealable. *State v. Jones,* 920 S.W.2d 116, 117 (Mo.App. E.D.1996). However, there are exceptions to the rule. *Chromalloy Am. Corp. v. Elyria Foundry,* 955 S.W.2d 1 (Mo. banc 1997). The question here is whether the lower court's judgment qualifies as an exception to the general rule.

Similar facts to those at issue appear in *Chromalloy,* wherein the trial court dismissed plaintiff's petition without indicating whether the dismissal was with or without prejudice. On appeal, the Missouri Supreme Court, found that the trial court's dismissal prevented plaintiff from re-offering the rejected allegations. The court held that an appeal may be taken from a dismissal without prejudice when "the dismissal has the practical effect of terminating the litigation in the form cast or in the plaintiff's chosen forum." *Id.* at 3.

In this case, the lower court's judgment found that the answering machine was not an electronic device, that the recording of plaintiff's telephone conversations was not an aural acquisition, and that the recordings did not occur at a location constituting an interception. Since the court held that plaintiff's claims were not covered by the statute, the judgment had the practical effect of terminating the litigation brought under the statute. It would be futile for plaintiff to reform her petition and re-offer her assertion that defendant violated the Missouri wiretapping statute in the same court. Such facts render the judgment final. *Id.* at 4. *Accord Mahoney v. Doerhoff Surgical Servs.,* 807 S.W.2d 503 (Mo. banc 1991). The underlying judgment is an exception to Rule 67.03 and should be considered a final order appealable to this court.

In her sole point on appeal, Pamela claims the trial court erred in dismissing her claim under § 542.418.2. That section provides: "Any person whose wire communication is intercepted, disclosed, or used in violation of sections 542.400 to 542.424 shall ... [h]ave a civil cause of action against any person who intercepts, discloses, or uses, or procures any other person to intercept, disclose, or use such communications ..." § 542.418.2. In bringing her claim under § 542.418.2, Pamela alleges that Dennie violated § 542.402. That section provides that an individual is guilty of illegal wiretapping when he or she "[k]nowingly intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire communication ..." § 542.402.1(1). Section 542.400 defines "intercept" as "the aural acquisition of the contents of any wire communication through the use of any electronic or mechanical device, including but not limited to interception by one spouse of another spouse ..." § 542.400(6).

In its order dismissing Pamela's claim, the trial court specifically held: (1) the equipment described was not an "electronic device" because it is the type of equipment specifically excepted by § 542.400(5)(a); (2) the recordings did not constitute an "aural acquisition;" and (3) the activity complained of occurred at the point of reception and therefore did not constitute the interception of a "wire communication." Pamela challenges all of these findings.

■ In reviewing the circuit court's dismissal, we view the facts in the light most favorable to Appellant, treating all facts alleged as true, and determine whether the facts pleaded and the inferences reasonably drawn therefrom state any ground for relief. *K.G. v. R.T.R.,* 918 S.W.2d 795, 797 (Mo. banc 1996). A petition is not to be dismissed for failure to state a claim if any set of facts is asserted which, if proved, would entitle the plaintiff to relief. *Martin v. City of Washington,* 848 S.W.2d 487, 489 (Mo. banc 1993).

■ Pamela first argues that the trial court erred in finding that the answering machine used was not an "electronic, mechanical, or other device." Section 542.400 defines "electronic, mechanical, or other device as: "any device or apparatus which can be used to intercept a wire communication other than ... [a]ny telephone or telegraph instrument, equipment or facility, or any component thereof ..." § 542.400(5)(a). The trial court found that the device used to make the recordings fell within the definition's exception for telephones and their components. Neither party contends that the device was a telephone. However, Respondent argues that "recording devices are com-

ponent parts of telephone equipment in most of our homes."

■ When interpreting a statute, the words contained therein must be given their plain and ordinary meaning. *McCollum v. Director of Revenue,* 906 S.W.2d 368, 369 (Mo. banc 1995). "Component" is defined as "a constituent part." Merriam–Webster's Collegiate Dictionary 235 (10th ed.1994). "Constituent" is defined as "an essential part." *Id.* at 248. Therefore, in order for the answering machine to qualify as a telephone component, it would need to be an essential part of that telephone. The facts as pleaded indicate that the voice activated recorder[2] was a separate electronic device which was not essential to the operation of the telephone. Accordingly, the recorder was not a "component" of the telephone and qualifies as an "electronic, mechanical, or other device" under § 542.400(5). *See State v. Martinelli,* 972 S.W.2d 424, 431–32 (Mo. App. E.D.1998) (holding that a voice-activated recording device plugged into a phone jack and located within the home of both parties violated the statute).

■ Pamela next argues that the trial court erred in finding that Dennie's actions in recording the conversations did not constitute an "aural acquisition." On appeal, Respondent asserts, and apparently the trial court agreed, that the phrase "aural acquisition" implies a prerequisite of contemporaneously hearing the transmission. The statute does not define, nor have Missouri courts addressed, the meaning of "aural acquisition." However, the United States Court of Appeals for the Fifth Circuit, when interpreting similar language in the federal wiretapping statutes, stated:

> [A]n "acquisition" occurs at the time the recording is made. This acquisition itself might be said to be "aural" because the

contents of the conversation are preserved in a form which permits the later aural disclosure of the contents. Alternatively, a court facing the issue might conclude that an "aural acquisition" is accomplished only when two steps are completed—the initial acquisition by the device and the hearing of the communication by the person or persons responsible for the recording.

*United States v. Turk,* 526 F.2d 654, 658 (5th Cir.1976). Either interpretation produces the same result in this case. The conversations were acquired and later listened to by Respondent. When the conversations were heard is not an issue, since "the recorder can be the agent of the ear." *Id.* at n. 2.[3] Recordings of telephone conversations made by a voice-activated recorder, plugged into a phone jack in the parties' home qualify as an "aural acquisition" under § 542.402.1(1). *See Martinelli,* at 431–32 (Mo.App. E.D.1998).

■ Finally, Pamela asserts that the trial court erred in finding that the recorder did not intercept a "wire communication." Subsection (12) defines a "wire communication" as: "any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception …" § 542.400(12).

The communication at issue is a telephone conversation. Such transmissions are made through the use of facilities for transmitting oral communications by the aid of wire or cable between a point of origin and a point of reception. Respondent argued, and apparently the trial court agreed, that the point of origin or reception was the house rather than the telephone unit used to make or receive the call. Respondent claims that because the recording occurred in the house, it could not be considered an interception since it did not

---

2. The petition describes the recording instrument as a "voice activated telephone answering machine." In Appellant's statement of facts, it is referred to as a "voice activated recording device." The Respondent accepts and adopts Appellant's statement of facts. When reviewing dismissal of a petition, we give the allegations therein their broadest intendment. *Young v. Stensrude,* 664 S.W.2d 263, 264 (Mo.App. E.D. 1984).

3. In promulgating protective legislation prohibiting unauthorized wiretapping, the clear intent of the legislature was to proscribe unauthorized interception of conversations in which an individual has a reasonable expectation of privacy. We would largely defeat the purpose of the law were we to exempt recordings which are heard at a later time.

occur between the wire communication's points of origin and reception. We find no basis for this assertion. A telephone communication originates with one telephone and ends at another. "The recording which took place came from [a] phone jack and the conversation carried over the phone line," which clearly constitutes the interception of a "wire communication" under § 542.402.1(1). *Martinelli*, at 431–32 (Mo.App. E.D.1998).

Pamela has pled facts which, if found to be true, establish that her wire communications were intercepted by Dennie. Accordingly, she has stated a cause of action under § 542.418. The trial court erred in dismissing her claim.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

All concur.