**STATE of Missouri, Appellant,**

v.

**Robert Ryan SMOTHERS, Respondent.**

**No. WD 70361.**

Missouri Court of Appeals,
Western District.

Nov. 17, 2009.

---

Stephanie C. Luntsford, Assistant Prosecuting Attorney, Moberly, MO, for Appellant.

Margaret M. Johnston, Assistant State Public Defender, Columbia, MO, for Respondent.

Before Division III: THOMAS H. NEWTON, Chief Judge, and MARK D. PFEIFFER and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

Respondent, Robert Smothers (Smothers), was charged with one count of forgery and one count of possession of a forging instrumentality. The circuit court found that the evidence contained in the State's information and probable cause statement did not meet the statutory requirements of forgery as a matter of law. Accordingly, the circuit court granted Smothers's motion to dismiss. Because we find that the State's allegations, if proved, could meet the statutory elements of forgery, we reverse.

## I. Facts and Procedural Background

Smothers was subject to a valid, court-ordered drug test as a condition of his bond in an unrelated matter. The circuit court ordered a police officer to administer the drug test to Smothers. The police officer observed what appeared to be Smothers urinating into a sample jar; however, the police officer became suspicious when he heard a snapping noise and observed Smothers acting "very nervous and shaky." Smothers handed the police officer the urine sample. The police officer told Smothers that he had reason to believe that the urine sample was fake. Smothers then allegedly admitted to giving a false urine sample and to using a Whizzinator device and dehydrated urine to do so.[1]

The State filed a felony information charging Smothers with two counts: violation of section 570.090 [2] (forgery) and violation of section 570.100 (possession of a forging instrumentality). In Count I of the felony information, the State charged that Smothers, "with the purpose to defraud, used and/or transferred as genuine a urine sample, knowing that it had been

---

1. A Whizzinator is a device designed to fraudulently defeat drug tests. It is sold as a kit containing dried urine, a syringe, heater packs (to keep the urine at body temperature), a false penis, and an instruction manual. *See* online encyclopedia entry for "Whizzinator," at http://en.wikipedia.org/wiki/Whizzinator.

2. All statutory references are to RSMo 2000, updated through the 2009 Cumulative Supplement.

made or altered so that it purported to have a genuineness or ownership that it did not possess." In Count II of the felony information, the State charged that Smothers, "with the purpose of committing forgery, possessed a whizzenater [sic] used for making a false urine sample."

Smothers filed a motion to dismiss the charges, arguing that the forgery statute did not apply because the urine sample did not qualify as "any writing or other thing including receipts and universal product codes," as required by the statute. § 570.090.1(3).

The circuit court held a hearing on Smothers's motion to dismiss, and, on November 13, 2008, it entered a "Judgment of Dismissal," granting the motion. In its judgment, the circuit court found that section 570.090 did not apply because the State's evidence, if proved, would not establish that Smothers made or altered anything. In addition, the circuit court found that section 570.090 did not apply because Smothers lacked the purpose to defraud in that he did not intend to deprive the State of anything. The circuit court's judgment indicates that it was entered "without prejudice." The State appeals pursuant to section 547.200.

## II. Jurisdiction

Smothers argues that this court lacks jurisdiction because the judgment appealed from was not final in that it was denominated "without prejudice." In order to have jurisdiction over this appeal, there must be a final judgment. In addition, we must find that the appeal does not place Smothers in double jeopardy. We hold that the judgment below was a final judgment and that this appeal does not place Smothers in double jeopardy.

### 1. Finality of the Judgment.

█ The parties agree that jurisdiction lies in this court, if at all, pursuant to section 547.200. Subsection 5 of section 547.200 directs the Supreme Court of Missouri to issue rules to facilitate the disposition of appeals made pursuant to that section. Thus, appeals made pursuant to section 547.200 must conform to Missouri Supreme Court Rules 30.01 and 30.02, which govern appeals in criminal cases. *State v. Burns*, 994 S.W.2d 941, 942 (Mo. banc 1999).

Rule 30.01 provides that, in a criminal case, a party shall be entitled to an appeal after the rendition of *final* judgment. Rule 30.02 provides the procedure for interlocutory appeals when such appeals are "permitted by law." Section 547.200.1 lists circumstances when the State is permitted by law to pursue interlocutory appeals: when an order or judgment (1) quashes the arrest warrant; (2) finds that the accused lacks the capacity or fitness for trial; (3) suppresses evidence; or (4) suppresses a confession or an admission.

█ If a judgment does not qualify under the circumstances listed in section 547.200.1, then, in order for appellate jurisdiction to be available to the State in a criminal case, the judgment the State appeals must be final. *Burns*, 994 S.W.2d at 942–43; § 547.200.2. The judgment in this case did not quash an arrest warrant, make a finding of incapacity or unfitness, suppress evidence, or suppress a confession or admission, *see* § 547.200.1. Therefore, appellate jurisdiction does not exist unless the circuit court's order of dismissal was a final judgment. *Burns*, 994 S.W.2d at 942–43; Rule 30.01.

█ A dismissal *with* prejudice is a final order, but a dismissal *without* prejudice is not a final order unless the dismissal has the " 'practical effect of terminating the litigation in the form in which it is cast or in the plaintiff's chosen forum.' "

*Burns,* 994 S.W.2d at 943 (quoting *Fitzpatrick v. Hannibal Reg'l Hosp.,* 922 S.W.2d 840, 842 (Mo.App. E.D.1996)). "The exception appears to be limited to those rare situations in which a dismissal without prejudice is based on an assertedly deficient claim ... or where the basis of the dismissal without prejudice places a substantial cloud on a party's right to further litigate an issue or claim...." *Id.* If the judgment precludes the litigant from maintaining the action in the forum chosen, it is a final judgment, irrespective of whether it is denominated "with prejudice" or "without prejudice." *Cramer v. Smoot,* 291 S.W.3d 337, 339 (Mo.App. S.D.2009). "If the dismissal was such that a refiling of the petition at that time would be a futile act, then the order of dismissal is appealable." *Nicholson v. Nicholson,* 685 S.W.2d 588, 589 (Mo.App. E.D.1985). "[W]hen the effect of the order is to dismiss the plaintiff's action and not merely the pleading, then the judgment is final and appealable." *Adams v. Inman,* 892 S.W.2d 651, 653 (Mo.App. W.D.1994).

> Applying these exceptions, dismissals without prejudice have been held appealable in such cases where the dismissal was based on statutes of limitations, theories of estoppel, a plaintiff's lack of standing, failure of the petition to state a claim where the plaintiff chose not to plead further, failure of a plaintiff in a medical malpractice action to file the health care provider affidavit and the plaintiff's claims not being covered by the statute upon which the petition was based.

*Doe v. Visionaire Corp.,* 13 S.W.3d 674, 676 (Mo.App. E.D.2000).

■ Here, although the circuit court entered a dismissal "without prejudice," we hold that the judgment had the practical effect of terminating the litigation in the form it was cast,[3] and thus the judgment was final and appealable.

The circuit court ruled that, under the facts submitted, Smothers cannot be found guilty of forgery. The circuit court's ruling was based on its belief that the State's felony information was "assertedly deficient"; moreover, the ruling "place[d] a substantial cloud on [the State's] right to further litigate an issue or claim." *See Burns,* 994 S.W.2d at 943. The judgment stated that it was "without prejudice," meaning that the State could refile the charges if it so desired. Nevertheless, refiling the same charges, based on sections 570.090 (forgery) and 570.100 (possession of a forging instrumentality), would have been a "futile act," *see Nicholson,* 685 S.W.2d at 589, given that the circuit court had already ruled that the facts submitted cannot, as a matter of law, fulfill the elements of forgery. It would serve no practical purpose to refile the forgery charges in the circuit court only to have the court confirm its previous ruling and dismiss the matter with prejudice.

Moreover, this case is analogous to civil cases where the circuit court dismissed the petition "without prejudice" due to a failure to state a claim upon which relief could be granted, *see Hasemeier v. Smith,* 361 S.W.2d 697, 699 (Mo. banc 1962), or failure to state facts that would trigger the application of a statute. *See Carothers v. Carothers,* 977 S.W.2d 287, 289 (Mo.App. W.D. 1998) ("Since the court held that plaintiff's claims were not covered by the statute, the

---

**3.** It is possible that, in dismissing without prejudice, the circuit court believed that the State would cast the charges in a different form, for example, under section 575.060.1(2)(b). Nevertheless, the fact that another charge may be brought does not alter the fact that the judgment was a final adjudication of the charges brought. *See Hasemeier v. Smith,* 361 S.W.2d 697, 699 (Mo. banc 1962).

judgment had the practical effect of terminating the litigation brought under the statute."). According to the circuit court, the State's felony complaint did not allege facts that would trigger the application of section 570.090 (forgery). As such, the circuit court's judgment "had the practical effect of terminating the litigation brought under the statute[s]," and the judgment was therefore final and appealable. *See id.*

### 2. Double Jeopardy.

■■ In addition to finding a final judgment, we must also find that the appeal does not place Smothers in double jeopardy. § 547.200.2; *Burns,* 994 S.W.2d at 942–43. In a court-tried case, jeopardy attaches when the court begins to hear evidence. *State v. Jarvis,* 809 S.W.2d, 460, 461 (Mo.App. E.D.1991). Moreover, jeopardy cannot attach until the circuit court holds a proceeding that could result in finding the accused guilty of the subject charges. *State v. Coor,* 740 S.W.2d 350, 354–55 (Mo.App. S.D.1987). If the proceeding is designed to hear the accused's defenses or objections before trial, and no determination of factual guilt or innocence is made or attempted, then jeopardy does not attach. *Id.* In such cases, the proceeding could not result in finding the accused guilty, and therefore the accused is not placed in jeopardy. *Id.*

Here, the circuit court heard arguments on Smothers's motion to dismiss, but it did not begin to hear evidence on the question of Smothers's guilt. Since Smothers was never placed in jeopardy in the first instance, *see Coor,* 740 S.W.2d at 354–55, a remand from this appeal could not place him in double jeopardy.

Accordingly, we hold that we have jurisdiction because the State appeals from a final judgment and a remand from this appeal could not place Smothers in double jeopardy.

### III. Standard of Review

■■■ When the facts are uncontested and the only issue is a matter of statutory construction, we review the circuit court's dismissal of a felony complaint under a *de novo* standard. *Holtcamp v. State,* 259 S.W.3d 537, 539 (Mo. banc 2008); *State v. Rousseau,* 34 S.W.3d 254, 259 (Mo.App. W.D.2000). The interpretation of a statute is a pure question of law, and therefore we give the circuit court's interpretation no deference. *Rousseau,* 34 S.W.3d at 259; *State v. Plastec, Inc.,* 980 S.W.2d 152, 154–55 (Mo.App. E.D.1998). Both parties cite cases in which the appellate court reviewed the circuit court's decision to grant or deny a motion to dismiss under an abuse of discretion standard. *See State v. Kroenung,* 188 S.W.3d 89, 92 (Mo.App. S.D.2006); *State v. Sprinkle,* 122 S.W.3d 652, 658 (Mo.App. W.D.2003); *State v. Floyd,* 18 S.W.3d 126, 133 (Mo. App. S.D.2000). Those cases, however, did not turn on the circuit court's interpretation of a statute. *Kroenung,* 188 S.W.3d at 92 (turning on the circuit court's use of its inherent powers); *Sprinkle,* 122 S.W.3d at 658–59 (turning on whether the indictment put the accused on sufficient notice); *Floyd,* 18 S.W.3d at 133 (turning on whether the accused was given sufficiently prompt access to medical experts). By contrast, in this case the parties only disputed the proper interpretation of the forgery statute. As such, we review the circuit court's judgment using the *de novo* standard. *Holtcamp,* 259 S.W.3d at 539; *Rousseau,* 34 S.W.3d at 259.

### IV. Discussion

■■ The State argues that the circuit court erred in dismissing the charges because the uncontested evidence permitted an inference that Smothers "uttered a false statement." In order to prove the

elements of forgery under section 570.090.1(3), the State must prove that the accused (1) had a purpose to defraud and (2) made or altered anything other than a writing so that it purported to have a genuineness, antiquity, rarity, ownership or authorship which it did not possess. By contrast, in order to prove the elements of forgery under section 570.090.1(4), the State must prove that the accused (1) had a purpose to defraud and (2) used as genuine, possessed for the purpose of using as genuine, or transferred with the knowledge or belief that it would be used as genuine, (3) a writing or any other thing that the actor knew had been made or altered so that it purported to have a genuineness, antiquity, rarity, ownership, or authorship that it did not possess.

Thus, subsections 3 and 4 both require a purpose to defraud and a "thing" that purports to have a genuineness, antiquity, rarity, ownership, or authorship that it does not possess (hereafter "inauthentic item"). Subsection 3 requires the State to prove that the accused actually made or altered the inauthentic item; subsection 4, however, does not require the State to prove that the accused made or altered anything himself, but merely that he knew the inauthentic item had been made or altered so that it purported to have a genuineness it did not possess.

Here, the circuit court dismissed the forgery charge because the State's evidence, if proved, "would not show that the actual sample provided was made or altered by" Smothers. In so holding, the circuit court failed to consider whether the State could prove that Smothers's conduct met the elements of section 570.090.1(4).

The State could meet its burden by proving that Smothers, with the purpose to defraud and with the knowledge that the inauthentic item had been made or altered so that it purported to have a genuineness or ownership that it did not possess, *used* an inauthentic item as genuine, *possessed* an inauthentic item with the purpose to use it as genuine, or *transferred* an inauthentic item with the knowledge or belief that it would be used as genuine. § 570.090.1(4).

### 1. Purpose to Defraud.

■ The State argues that the circuit court erred in finding that, as a matter of law, the State cannot prove that Smothers acted "with the purpose to defraud." § 570.090. In finding that Smothers lacked such a purpose, the circuit court noted that it was "unclear what the State has been deprived of."

■ In order to prove that Smothers had a "purpose to defraud," the State need not prove the specific intent to defraud some particular person. *State v. Johnson*, 855 S.W.2d 470, 473 (Mo.App. W.D.1993). Rather, the State must only prove a general intent to defraud. *Id.* A governmental agency or the public generally are proper subjects of fraud for the purposes of forgery. *Id.* at 474. Forgery against the government or the public need not deprive them of money or property; so long as the accused has the purpose to frustrate the administration of justice, the "purpose to defraud" element is met. *Id.* at 473–74 (citing 37 C.J.S. Forgery § 4 (1943)); *see also State v. Burnett*, 970 S.W.2d 412, 415 (Mo.App. W.D.1998) ("The intent to defraud may exist where property rights are not involved."); *State v. Patterson*, 849 S.W.2d 153, 155–56 (Mo.App. W.D.1993) (affirming a forgery conviction when defendant had falsified information on rosters for continuing education classes submitted to the Department of Health).

In *Johnson*, we affirmed the defendant's forgery conviction when he signed a fingerprint card using a name that was not his. 855 S.W.2d at 473. An arrest war-

rant had been issued for the defendant, and he was subsequently stopped and arrested on an unrelated charge. *Id.* at 471. The defendant gave the police officer a false name with the purpose of avoiding the previously issued arrest warrant. *Id.* The police subjected the defendant to a lawful fingerprint test, and the defendant signed the false name to the fingerprint card. *Id.* The State charged the defendant with forgery, and the defendant filed a motion to dismiss, arguing that he lacked the intent to deprive any person of a property interest and that therefore the State could not prove the "purpose to defraud" element of forgery. *Id.* at 473. The circuit court overruled the accused's motion to dismiss, and we affirmed, holding that the State had proved the "purpose to defraud" element in that the defendant had the purpose to deprive the government and the public of the administration of justice. *Id.* at 474.

The facts here do not materially differ from those in *Johnson,* and therefore the same holding follows. Smothers was subject to a lawful, court-ordered drug test. Instead of complying with the court's order to provide the police officer with a sample of his own urine, Smothers allegedly used the Whizzinator device and transferred a false urine sample to the police officer. These facts permit an inference that Smothers had the purpose of frustrating the administration of justice. *See State v. Wakefield,* 682 S.W.2d 136, 143 (Mo.App. S.D.1984) (holding that an intent to defraud could be inferred from the defendant's conduct). Pursuant to a lawful court order, the State was entitled to a genuine urine sample from Smothers. The State's evidence, if proved, would establish that Smothers deprived the State of that right.

Smothers argues that the inauthentic item must have value. Similar to the false fingerprint card at issue in *Johnson,* a false urine sample has value in that it can deprive the government or the public of the administration of justice. 855 S.W.2d at 474. Because the State can meet the "purpose to defraud" element of forgery by proving that Smothers had the purpose to deprive the government and/or the public of the administration of justice, *see id.,* we hold that the circuit court erred in finding that the State cannot prove the element as a matter of law.

**2. Use of an Inauthentic Item as Genuine, Possession of an Inauthentic Item with the Purpose to use it as Genuine, or Transfer of an Inauthentic Item with Knowledge or Belief that it would be used as Genuine.**

▮▮▮ The State's evidence, if proved, could meet the "use, possess, or transfer" element of forgery. The State alleged Smothers *used and/or transferred as genuine* a false urine sample. A false urine sample qualifies as an inauthentic item because it purports to have a genuineness, ownership, or authorship that it does not possess. When Smothers represented the urine sample as his own, the urine sample lacked "genuineness" in that it was not what it purported to be, that is, a urine sample made by Smothers. Moreover, Smothers did not "own" the urine sample, though the urine sample was purportedly his own. Smothers did not "author" the urine sample in that he did not produce it himself. The evidence permits an inference that Smothers used the urine sample as genuine and/or transferred the urine sample with the knowledge or belief that the police officer would use it as genuine. Therefore, the State could potentially prove that Smothers, acting with the purpose to use it as genuine, and/or with the knowledge that the police officer would use it as genuine, used, possessed, and/or transferred an inauthentic item.

**3. Knowledge that the Inauthentic Item had been Made or Altered so that it Purported to have Genuineness or Ownership that it did not Possess.**

The State could also potentially prove that Smothers *knew* that the urine sample had been made or altered so that it purported to have a genuineness, ownership, or authorship that it did not possess. In Count I of the felony information, the State charged that Smothers, "with the purpose to defraud, used and/or transferred as genuine a urine sample, *knowing* that it had been made or altered so that it purported to have a genuineness or ownership that it did not possess." (Emphasis added.) According to the probable cause statement, Smothers admitted to using dehydrated urine that can be purchased along with the Whizzinator device. Although the record in this case is unclear regarding how the dehydrated urine was converted into an imitation of Smothers's urine sample, the facts clearly permit an inference that Smothers knew that the urine sample had been made or altered from dehydrated urine so that it purported to be a urine sample that had been made by him that day.

■■■ As such, the circuit court erred in dismissing the forgery charge on the ground that Smothers did not make or alter anything because section 570.090.1(4) contains no such element; moreover, the State's allegations, if proved, would satisfy the "made or altered" element and the "knowledge" element of section 570.090.1(4).

**4. Any Writing or Other Thing.**

■■ Smothers argues that a urine sample cannot form the basis of a forgery charge because it is not a writing. We disagree. Section 570.090.1(4) covers "any writing *or other thing* including receipts and universal product codes." (Emphasis added.) The legislative comment to the 1973 version of the statute states that "[i]ncluded within this definition would be the forging of false coins and slugs.[4] It also covers a thing other than a writing when it is made or altered so as to have some valuable attribute which it does not in fact have." § 570.090 cmt. Plainly, the statute is not confined to writings. Moreover, Missouri Approved Instruction and Charge 324.20.4 contains two model instructions, the first dedicated to "writings" and the second dedicated to "other items."

■■ Indeed, section 570.090.1(4) is broad enough to cover any inauthentic item, provided that the statute's other elements are also met. For example, the court in *Wakefield* held that a vehicle identification number on an automobile qualified as "anything other than a writing" under section 570.090.1(3) and was a proper subject matter upon which to base a forgery charge. 682 S.W.2d at 141–42.

Thus, we hold that (1) the State could prove that Smothers had a purpose to defraud in that he intended to frustrate the administration of justice; (2) under section 570.090.1(4), the State need not prove that Smothers personally made or altered anything; and (3) under the circumstances of this case, the forgery statute is broad enough to cover a false urine sample.

We therefore reverse and remand for proceedings consistent with this opinion.

THOMAS H. NEWTON, Chief Judge, and MARK D. PFEIFFER, Judge, concur.

---

4. A slug is a metal disk used as a coin or token, generally counterfeit. *See* definition of "slug," at http://dictionary.reference.com/browse/slug.