**STATE of Missouri, Appellant,**

v.

**Christopher TRIPLETT, Respondent.**

**No. WD 73486.**

Missouri Court of Appeals,
Western District.

Dec. 20, 2011.

Ashley E. Webb and Mark Gibson, Platte City, MO, for appellant.

Jeffrey Scott Eastman, Gladstone, MO, for respondent.

Division Three: KAREN KING MITCHELL, P.J., JAMES M. SMART, JR., and GARY D. WITT, JJ.

PER CURIAM:

The State of Missouri appeals the trial court's order dismissing without prejudice the charge against Christopher Triplett, respondent, following the trial court's decision to sustain Triplett's motion to suppress evidence. We dismiss the appeal.

### Statement of Facts

Respondent Christopher Triplett was involved in a vehicular accident on I–29 in Platte County, Missouri. The incident occurred as he was passing a semi-tractor trailer driven by Laverne Brown on a snowy and ice-covered stretch of pavement. According to Mr. Brown, Triplett was passing him on the left, lost control on the ice, and slid into his trailer. No one was hurt, but a window on Triplett's vehicle was broken. No one addresses the issue of whether the vehicles were required to wait at the scene (as opposed to some other form of reporting the accident), but in any event, both drivers waited at the scene for the Highway Patrol. Triplett pulled his vehicle onto the shoulder in front of Brown's truck.

Trooper Kutzner of the Missouri Highway Patrol arrived about forty minutes later. Kutzner talked to the drivers at the scene. He asked Triplett to join him inside his patrol car. Once inside, Kutzner detected a strong odor of alcohol coming from Triplett. When asked, Triplett ac-

knowledged having "had, like, two beers" earlier at a restaurant and bar. The odor of alcohol, and the admission, prompted Kutzner to administer a series of field sobriety tests. Triplett acquiesced. Kutzner administered the horizontal gaze nystagmus ("HGN") test, an alphabet test, a counting-backward test, and a finger-pat test. Kutzner did not ask Triplett to perform any other recognized tests, such as the walk and turn test, because Triplett would have had to exit the patrol car and perform the tests on a snow-covered road.

Kutzner asked Triplett to place his back against the passenger-side door of his patrol car and to follow his finger as he passed it from side to side as he performed the HGN test. Triplett cooperated with Kutzner's request. During the test, Kutzner observed that Triplett's pupils were of normal size but his eyes were bloodshot. In conducting the HGN test, Kutzner found six possible clues of intoxication that were consistent with intoxication.

On two other field sobriety tests, Triplett performed without flaw. Kutzner asked Triplett to say a portion of the alphabet in an effort to assist him in deciding whether he should arrest Triplett for driving while intoxicated. This test required Triplett to start with the letter "C" and stop at "M." Consistent with these instructions, Triplett began at "C" and stopped at "M." In the process, Triplett said each letter without repetition, omission, or slur. The officer then had Triplett perform a finger-to-thumb pat test. This test required Triplett to touch the tip of each finger with the tip of his thumb in sequential order, first increasing, and then decreasing. He did so in proper sequence without skipping or omitting a number.

The officer asked Triplett to submit to a preliminary breath test (sometimes called a "portable breath test"), the result of which is not admissible as evidence of intoxication but may be considered in the probable cause determination as simply evidence that the subject has consumed some alcohol. *See* § 577.021 RSMo [1]; *York v. Dir. of Revenue,* 186 S.W.3d 267, 272 (Mo. banc 2006), *overruled in part on other grounds by White v. Dir. of Revenue,* 321 S.W.3d 298 (Mo. banc 2010).

The preliminary breath test indicated confirmation that Triplett had consumed some alcohol. The preliminary breath test was not designed to indicate intoxication or estimate a blood alcohol level, so it merely confirmed Triplett's admission of earlier consuming some beers. As a result of the HGN and preliminary breath test, Kutzner placed Triplett under arrest for driving while intoxicated.

The State formally charged Triplett with driving while intoxicated, in violation of section 577.010, and operating a motor vehicle in a careless and imprudent manner, in violation of section 304.012. On July 14, 2010, Triplett filed a motion to suppress all evidence obtained by the State during and subsequent to his allegedly unlawful stop and arrest. He combined that motion with a motion to dismiss the charge of driving while intoxicated. In his motion, Triplett sought

> an evidentiary hearing, out of the presence of the jury, and request[ed] the court to enter one or more of the following orders, to wit: (1) grant his motion to suppress, *and to dismiss the charge of driving while intoxicated on the grounds that there is insufficient evidence for the State of Missouri to proceed to a trial;* (2) enter a finding that there was not probable cause to believe the defendant was driving while intoxi-

**1.** Statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2010 Cumulative Supplement, unless otherwise indicated.

cated, *that as a result, there is insufficient evidence for the State of Missouri to proceed to a trial . . .,* and to dismiss the charge against him; and (3) enter an order for such other and further relief as this court deems proper in the circumstances.

(Emphasis added.) The motion reads like a combination motion to suppress evidence and motion to dismiss based on a claim of lack of evidence to warrant taking the case to trial. The motion to dismiss apparently was predicated upon the suppression of the evidence on the basis of an invalid arrest.

■ The prosecution filed no formal response to the motions. There is no requirement that the prosecution file a written response to a motion to suppress to preserve its right to contest the motion. One might expect the State, however, to seek to reserve to itself (and not concede to the court) the right to dismiss the case if indeed a substantial part of the evidence is suppressed. The State here, nevertheless, made no response or comment as to the combined motion to suppress/motion to dismiss other than to present evidence as indicated below.

At the hearing scheduled in response to Triplett's filing, on December 2, 2010, the State appeared and presented the testimony of Mr. Brown, the driver of the other vehicle involved in the collision with Triplett, and Officer Kutzner. Mr. Brown testified that he was driving slowly in icy, snow-packed conditions on I–29 when he saw in his side mirror that Triplett's vehicle, which presumably was attempting to pass, slid into the left side of his semi tractor-trailer due to the ice. He testified that the weather was "extremely icy, winter conditions, real cold." He testified that no one was hurt in the collision. Triplett moved his vehicle from the point of the collision to a point on the shoulder in front of Mr. Brown's vehicle. They waited in separate vehicles for the Highway Patrol.

Officer Kutzner also testified about his arrival at the scene, his contact with Triplett, and his detection of the odor of alcohol and the field sobriety testing. He testified that he was with Triplett for about half an hour before the arrest. He said that when he asked Triplett about what time the accident occurred, Triplett referred to his cell phone to check the time of his phone call made shortly after the accident. Triplett was cooperative and responsive in answering questions. Kutzner said there was no hesitation, reservation, or qualification of Triplett's answers in his responses. Triplett's answers were clear, coherent, understandable, and complete. The speech was not slurred.

Officer Kutzner acknowledged that the preliminary breath test's only value is to verify that the subject had consumed some alcohol that night. He described in detail the tests given Triplett and Triplett's performance on the tests. He said he detected the strong odor of alcohol and that Triplett's eyes were bloodshot. Triplett indicated to the officer that it had been almost twenty hours since he had last slept. He said Triplett's eye pupils were normal, and his eyes did not appear glassy and were not noticeably watery. He did not recall anything noticeably unusual about Triplett's gait as he walked behind Triplett to the police vehicle. Essentially, Kutzner relied upon the odor of alcohol, the bloodshot eyes, and the lack of successful performance of the HGN test in arresting Triplett.

Triplett's counsel also questioned Officer Kutzner about the citation for careless and imprudent driving. The officer stated that he cited Triplett for careless and imprudent driving because Triplett admitted that he skidded on the ice. Kutzner noted

on the citation that Triplett was "traveling too fast for conditions." On cross examination, when asked how fast he thought Triplett was going, he answered, "I have no clue," then he explained that the driver of the truck had stated that he was going slowly, about 35 m.p.h., on the Interstate and that Triplett's vehicle was apparently in the process of trying to overtake the truck on its left when it slid into the truck. On that basis, he judged that Triplett was going too fast for conditions.

The prosecution (having the burden of proof and persuasion on the motion to suppress) entirely waived argument and made no comment at all at the conclusion of the evidence. Triplett's attorney summarized the evidence as to Triplett's driving and argued that the State had not met its burden to show that there was sufficient reason to arrest Triplett for driving while intoxicated. Triplett's attorney argued that the fact that the accident occurred was not indicative of intoxication or of impaired judgment because the conditions were so extreme. Triplett's attorney also briefly discussed the evidence on which the officer said he relied: the bloodshot eyes, the odor, and the HGN test; and also discussed the evidence indicating that Triplett was not intoxicated but was in command of his faculties.[2] At the conclusion of the hearing, the court stated that it would take "the motion" under advisement.

Four days later, the trial court made a docket entry stating as follows:

**Dismiss by Ct w/o Prejudice**

Cause having been taken under advisement, the Court now finds that the State has failed to meet its burden. Defendant Christopher Triplett's motion to suppress is SUSTAINED and he is ORDERED DISCHARGED. Certified copy to attorney and prosecutor.

The court also issued its written "Order and Judgment" stating that the court was granting the motion to suppress and dismissing the case without prejudice, because the State did not carry its burden of persuading the court that the officer had legal grounds to arrest Triplett.

The State appeals the trial court's order dismissing, without prejudice, the driving while intoxicated charge filed against Triplett. The State argues that the trial court lacked authority to dismiss the case, because in this case there was no legal reason to dismiss the case, and the State was therefore solely vested with the ability to charge and dismiss the case. The State is not (in this appeal) seeking interlocutory review of the trial court's order granting suppression, but instead seeks reversal of the dismissal and remand of the case. The State, in fact, indicates that it seeks remand to be able to ask the court for findings of fact and conclusions of law on the court's interlocutory ruling on the motion to suppress, so that the State may make a more informed decision on whether

---

2. Triplett's counsel argued:

There's no real evidence as to how fast [Triplett] was traveling and I respectfully suggest [the State has not] sustained their burden there was enough to arrest him for the DUI, as well, for further processing.

No problems with speech, bloodshot eyes without glassy, watery eyes. No mumbling, no slurring, no inability to communicate effectively. We've basically got an odor and it's not yet illegal to drive with the odor

of alcohol on your breath and it's not illegal to admit consuming two beers. The [preliminary breath test] confirmed his representation that he had consumed alcohol earlier that evening and that further attests to his veracity about what he said happened that evening, and so we're basically down to an eye test and his ability to perform the other two which, I strongly suggest, is not enough for the State to sustain their burden in this case.

to take an interlocutory appeal of the ruling on the motion. The State thus seeks reversal of the dismissal and remand to the circuit court.[3]

## Motion to Dismiss

■ Triplett has filed a Motion to Dismiss the State's Appeal. He contends that because the trial court entered a dismissal without prejudice in his driving while intoxicated case, and this is a purported appeal of the ruling on the motion to dismiss and not an appeal of the motion to suppress, this court is without authority to hear the present appeal because no final judgment has been entered.

Missouri Supreme Court Rule 30 [4] governs appeals in criminal cases. Under Rule 30.01(a), a party may appeal after the rendition of a final judgment. "If a judgment does not qualify under the circumstances listed in section 547.200.1 [for interlocutory appeals], then, in order for appellate jurisdiction to be available to the State in a criminal case, the judgment the State appeals must be final." *State v. Smothers*, 297 S.W.3d 626, 630 (Mo.App. 2009). While the trial court's grant of Triplett's motion to suppress would normally qualify under section 547.200.1 for interlocutory review, the trial court went a step further and granted Triplett's motion to dismiss, which was coupled with his motion to suppress. Thus, the issue is whether the court's dismissal *without* prejudice is a final appealable order.

■ "A dismissal *with* prejudice is a final order, but a dismissal *without* prejudice is not a final order unless the dismissal has the 'practical effect of terminating the litigation in the form in which it is cast or in the plaintiff's chosen forum.' " *Id.* (quoting *State v. Burns*, 994 S.W.2d 941, 943 (Mo. banc 1999)); *see also Nolan v. State*, 959 S.W.2d 939, 940 (Mo.App.1998).

The exception appears to be limited to those rare situations in which a dismissal without prejudice is based on an assertedly deficient claim ... or where the basis of the dismissal without prejudice places a substantial cloud on a party's right to further litigate an issue or claim.... If the judgment precludes the litigant from maintaining the action in the forum chosen, it is a final judgment, irrespective of whether it is denominated "with prejudice" or "without prejudice."

*Smothers*, 297 S.W.3d at 631 (internal quotations and citations omitted). In criminal cases, "a judgment is final when the trial court enters an order of dismissal or discharge of the defendant prior to trial which has the effect of foreclosing any further prosecution of the defendant on a particular charge." *Burns*, 994 S.W.2d at 942.

In *State v. Smothers*, the circuit court ruled that under the facts submitted, the defendant could not be found guilty of the charged crimes of forgery or possession of forging instrumentality as the State's felony information was deficient because the elements for the crimes could not be established even with proof of the facts pleaded. 297 S.W.3d at 631. While the court ultimately concluded that the motion to dismiss was improperly granted, it first found that the court had jurisdiction over the appeal because "the ruling placed a sub-

---

**3.** The State says in its brief that for some reason it did not timely receive notice of the court's ruling. The State said that it had to apply for permission to file its notice of appeal out of time (which was granted), but it had no opportunity to take up with the trial court its surprise at the court's ruling dismissing the charge.

**4.** All rule citations are to Missouri Supreme Court Rules (2011) unless stated otherwise.

stantial cloud on the State's right to further litigate an issue or claim." *Id.* (internal quotation omitted).

The judgment stated that it was "without prejudice," meaning that the State could refile the charges if it so desired. Nevertheless, refiling the same charges, based on sections 570.090 (forgery) and 570.100 (possession of a forging instrumentality), would have been a "futile act," ... given that the circuit court had already ruled that the facts submitted cannot, as a matter of law, fulfill the elements of forgery. It would serve no practical purpose to refile the forgery charges in the circuit court only to have the court confirm its previous ruling and dismiss the matter with prejudice.

*Id.*

We believe this case, however, is distinguishable from *Smothers*. This case is not about the trial court's legal interpretation of the elements of a statute or rule of law. We believe this case is more like *State v. Burns*, 994 S.W.2d 941 (Mo. banc 1999). As in *Burns*, which involved a dismissal as a pre-trial sanction against the State (for refusal to produce a confidential material witness for interview), the trial court may again reach the same result if the State refiles the charge and everyone again takes the same posture. Nevertheless, that possibility does not make this dismissal without prejudice a final judgment. *See id.* at 943.[5]

In this case, we think the futility would be exercised in the processing of the appeal as to the dismissal of the charge without prejudice. The State does not seek review of the suppression ruling. If the State had appealed both the suppression ruling and the dismissal, perhaps we could have addressed the suppression ruling as part of the appeal. *See State v. Bibb*, 922 S.W.2d 798, 802–03 (Mo.App. 1996) (reversing the trial court's order granting the motion to suppress and discharging the defendant, and remanding for further proceedings). Rather, the State wants a reversal only of the trial court's dismissal ruling—that is, the State wants it reversed precisely so that it can ask the court, post-hearing, post-ruling, and post-appeal, to enter "findings of fact and conclusions of law." Then, the State says, it can decide whether to appeal.

We fail to see that it could serve a practical purpose to entertain an appeal by the State when the State, if it believes it possesses sufficient evidence, is already allowed (without appealing) to re-file the charge. Also, we fail to see that if the State makes a tardy request for findings of fact and conclusions of law, the trial court is likely to accommodate the request.[6] The issue on appeal here is not about the proper elements of the charged offense. It is about whether the trial court properly dismissed the charge without prejudice after granting the motion to suppress evidence. In that respect, it is like other dismissals without prejudice, such as dismissals without prejudice as a sanction for improper prosecution conduct. *See, e.g., Burns*, 994 S.W.2d at 941–43.

The State says its objective—once it wins the appeal, securing reversal and re-

---

5. The Court in *Burns* added that if the trial court lacked authority to dismiss the information without prejudice, the State is not utterly without recourse, citing Rule 97 and section 530.010 (involving writ practice). 994 S.W.2d at 943.

6. Nor is it clear why, in light of the fact that the witnesses do not contradict one another, such findings of fact and conclusions of law are necessary in this case. However, we have not been asked to review the ruling on the motion to suppress, and, accordingly, we express no opinion on the propriety of the court's ruling on the motion to suppress.

mand—is to *evaluate* whether to appeal the interlocutory motion to suppress by asking for the trial court for more specific findings of fact and conclusions of law. We are unaware, however, of any specific rule or other authority the State would have available to insist on more specific findings of fact and conclusions of law, regardless of what this court does. The State did not ask for findings of fact and conclusions of law prior to the submission of evidence to the trial court on the motion to suppress, and we fail to see how the State would be entitled to compel the court to issue findings and conclusions on remand if we were to reverse the dismissal for an improper exercise of authority in dismissing the case.

 In a civil case, in order for there to be a timely request for detailed findings of fact and conclusions of law, the request must be made before the introduction of evidence. *See* Rule 73.01. We are aware of no comparable specific authority allowing the parties in criminal cases to request such specific findings and conclusions in connection with suppression motions or other rulings. *See* Rule 27.01. Of course, sometimes, whether requested by a party or *sua sponte*, the court will adopt findings of fact and conclusions of law. *See, e.g., State v. Trenter,* 85 S.W.3d 662, 668, 672–73 (Mo.App.2002). And other times the court will not. *See, e.g., State v. Stevens,* 845 S.W.2d 124, 127 (Mo.App.1993); *State v. Morr,* 811 S.W.2d 794, 796 (Mo.App. 1991). On review of the trial court suppression ruling, if the reviewing court determines that it needs specific findings to carry out its duty of review in view of a contradictory factual record, the reviewing court may remand for specific factual findings. *See, e.g., State v. Scott,* 841 S.W.2d 787, 789 (Mo.App.1992). Issues of law are, of course, reviewed *de novo. State v. Williams,* 163 S.W.3d 522, 525 (Mo.App. 2005).

We are not aware of any argument that suppression hearings (which are to be decided by a preponderance of the evidence pursuant to section 542.296.6) should be subject to the same procedure as that specified for civil cases by Rule 73.01. In other words, we are uncertain of the general right of the State to demand specific findings and conclusions before introduction of the evidence. We assume any such request, if applicable, must be made before the hearing commences, as in Rule 73.01. In any event, the obvious fact is that once a judge has already drafted and issued a written ruling on the preliminary motion to suppress,[7] the judge is not likely to voluntarily accommodate the State's untimely post-ruling request for more specific findings of fact and conclusions of law so the State can decide whether to appeal. Accordingly, even if the trial court here lacked authority to dismiss the case without prejudice without the specific permission of the State,[8] we fail to see that reversing the dismissal without prejudice and remanding the case would have any practical effect in producing the specific findings and conclusions at which this appeal is directed.

7. In post-conviction motion cases, which are civil cases, the Rules require the adoption of findings and conclusions. *See, e.g.,* Rules 29.15(j) and 24.035(j).

8. In actuality, the prosecution, by its silence in the face of the defendant's request for a dismissal without prejudice (on the basis that the State lacks sufficient evidence to take the case to trial), may very well have seemed to the trial court to acquiesce in the court dismissing the charge if in fact the court granted the suppression of evidence. Accordingly, the trial court may have believed it was complying with the desires and tacit agreement of both parties in dismissing the charge.

## Summary

■ The ruling in question was a dismissal without prejudice prior to the introduction of evidence on the issue of the guilt of the defendant. The ruling on the suppression motion was purely about the validity of the arrest, and the dismissal without prejudice was granted only in light of the court's grant of the suppression motion. There is no reason to believe that the dismissal was tantamount to a final judgment, such that there is a final, appealable issue to be addressed.[9]

The State indicates that it has not decided that it wishes to appeal the ruling on the suppression motion even if we vacate the dismissal and remand. Because the State's sole argument and sole professed reason for the appeal is to vacate the dismissal so that it may on remand ask the court for more specific findings of fact and conclusions of law—a request which the trial court need not grant—we believe there is no practical controversy before this court in this appeal.

## Ruling

For these reasons, we conclude that we have no basis or authority to proceed further. We grant the motion to dismiss. Appeal dismissed.

---

9. The double jeopardy clause does not render the dismissal a final judgment. Double jeopardy is not an issue as to a new charge because the motion hearing was a pre-trial hearing as to the sufficiency of the evidence to warrant the admission of any evidence resulting from the arrest. *See* § 547.200.2; *Burns,* 994 S.W.2d at 942–43. In a court-tried case, jeopardy attaches once evidence has been presented as to the merits of the issue of guilt.

*State v. Connell,* 326 S.W.3d 865, 867 (Mo. App.2010); *State v. Jarvis,* 809 S.W.2d 460, 461 (Mo.App.1991). "If the proceeding is designed to hear the accused's defenses or objections before trial, and no determination of factual guilt or innocence is made or attempted, then jeopardy does not attach." *Smothers,* 297 S.W.3d at 632. Here, the trial court never began to hear evidence regarding the question of Triplett's guilt.